STATE, Use of Amanda Stansfield, Individually, and ELLA and BERKLEY STANSFIELD, Infants, . by Amanda Stansfield, Their Next Friend,

*vs.*

CHESAPEAKE & POTOMAC TELEPHONE COMPANY and the ELECTRIC AND MANUFACTURING CO. OF MD. and the PATAPSCO ELECTRIC AND MFG. CO. OF DELAWARE.

*Electric light companies: poles and wires in public thoroughfares; property of company; subject to their control; injuries to third parties who ascended the poles; spikes in poles not implied invitation to ascend.*

The principle of *implied invitation,* can not be invoked to hold a proprietor liable for injuries to third parties received where such third parties have come upon the property from motives having no relation to the business or interest of the proprietor.                    p. 124

The poles and wires of an electric light company, although located on and over a public thoroughfare, remain the company's property, and are subject to its control in order that its

obligation to the public may be performed and that its interests may be protected.                                    p. 123

The spikes driven in the poles supporting electric light wires, placed there to afford a permanent and convenient means of ascent for the company's agents in repairing its wires, etc., do not offer an implied invitation to the public to use the poles for purposes of their own.                          p. 125

A kitten had climbed a pole that supported the wires and cables of an electric light company; for the purpose of rescuing the kitten, a pedestrian ascended the pole by means of the spikes which were driven into it for the purpose of enabling the companys' employees to keep the equipment in order; he was killed by coming into contact with a heavily charged wire, and his widow brought suit for damages against the company; *held,* there was no mutuality of interest between the defendant and the deceased which would warrant holding that his ascent of the pole was induced by any implied invitation of the company, and it was further *held,* that the plaintiffs were not entitled to recover.                                    pp. 124, 127

*Decided March 19th, 1914.*

Appeal from the Baltimore City Court.   (BOND, J.)

The facts are stated in the opinion of the Court.

The cause was argued before BOYD, C. J., BURKE, THOMAS, PATTISON, URNER, STOCKBRIDGE and CONSTABLE, JJ.

*Arthur W. Machen, Jr.,* (with whom was *Edward M. Hammond* on the brief), for the appellants.

*Jesse Slingluff and Shirley Carter* (with a brief by *Bernard Carter & Sons* and *Marbury, Gosnell & Williams*), for the appellees.

URNER, J., delivered the opinion of the Court.

The appeal in this case is from a judgment entered on demurrer to a declaration which alleges in substance that the defendant companies maintained in one of the highways of Howard county, passing through Ellicott City, a series of poles supporting wires carrying electric current used for telephone and lighting purposes, and that one of the poles was located in front of the dwelling occupied by Harry Stansfield and his family; that projecting from this pole were iron spikes adapted and intended by the defendants for use in ascending the poles, and that the spikes, being conveniently arranged for such use, operated as an invitation to the public, and more particularly to the owners and occupiers of the abutting properties to ascend the pole by means of the spikes, whenever they might have occasion to do so for any proper purpose, and especially for the preservation of the life of animals or human beings, or for the recovery of personal property, and that, as arranged for such use, the spikes constituted also a representation that the ascent of the pole might be accomplished with safety; that the maintenance of such a series of spikes on a pole used for the support of wires carrying a high tension current of electricty, in a street or highway of an incorporated city, was negligent, unusual, antiquated, unnecessary and improper; that on March 25, 1913, a kitten belonging to the said Harry Stansfield, and a favorite pet of his infant children, climbed said pole and remained thereon, and, his children being greatly distressed at the loss of the kitten, the said Harry Stansfield relying upon said invitation and representation of the defendants, ascended the pole by means of the spikes for the purpose of recovering the kitten and satisfying his children; that on previous occasions, as the defendants well knew, various. persons, including the said Harry Stansfield, had been accustomed to use the spikes to climb the pole in order to recover personal property and for other purposes; that the defendant negligently permitted the insulation on certain of

their wires attached to the pole and carrying a high tension current of electricity to be insufficient, although it appeared sufficient to persons who, like the said Harry Stansfield, were not familiar with electricity; and that the defendants neglected to warn him of the concealed danger, or to warn the public by sign or notice against climbing the pole by means of the spikes; that the said Harry Stansfield in ascending the pole in reliance upon said invitation and representation of the defendants, and acting (as he reasonably supposed) in accordance with the intention of the defendants in placing the spikes on the pole, and being ignorant of the hidden danger caused by the insufficiency of the insulation and by the high tension current, and without any fault or negligence on his part, accidentally came in contact with the insufficiently insulated wires and in consequence of such contact was instantly killed. Upon the case thus stated the widow and children of the deceased seek to recover damages for the loss they have sustained by this unfortunate accident.

The injury for which the suit was brought having occurred to one who had reached the place of danger by climbing the pole maintained by the defendants for the very purposes of suspending the wires at a suitable and safe elevation above the highway, the question to be determined is whether the declaration shows any violation of duty on the part of the defendants with reference to a person thus situated. While the pole and wires were located on and over a public thoroughfare they were the defendants' property and were necessarily subject to their control in order that their obligations to the public might be performed and that their own interests might be protected. The theory of the suit is that in providing a permanent and convenient means of ascent the defendants impliedly invited the public to use the pole for such purposes as the one which led to the accident. In our opinion the principle of implied invitation is not applicable to the case presented. There was no community of interest

between the defendants and the injured party which induced his visit to the place where he came in contact with the wires. The principle invoked does not apply to those who receive injuries on premises they have entered from motives which have no relation to the business or interest of the proprietor. *Benson* v. *Baltimore Traction Co.,* 77 Md. 535; *Kalus* v. *Bass,* 122 Md 467; *Heskell* v. *Auburn Light, Heat & Power Co.,* 209 N. Y. 86; *Plummer* v. *Dill,* 156 Mass. 426; *Purtell* v. *Philadelphia Coal Co.,* 256 Ill. 110. The most favorable view of the case from the standpoint of the declaration is that the defendant passively permitted the use of the pole by the deceased and others for the purposes mentioned. This might relieve them of the character of trespassers, but would leave them in the position of mere licensees to whom the defendants would owe only the duty to avoid exposing them wilfully to the risk of injury. *Heskell* v. *Auburn Light, Heat & Power Co., supra; Fitzpatrick* v. *Glass Mfg. Co.,* 61 N. J. Law, 378; *Rooney* v. *Woolworth,* 74 Conn. 720; 15 *Cyc.* 475. By the decision of this Court in *Benson* v. *Baltimore Traction Co., supra,* the principle of implied invitation was held not to be intended for the protection of "those who go where they are not invited, but merely with express or tacit permission, from curiosity or motives of private convenience in no way connected with business or other relations with the occupant." In *Heskell* v. *Auburn Light, Heat & Power Co., supra,* a telephone company, without previous permission, attached its wires to the pole of an electrc light, heat and power company in a public street, but the latter company afterwards tacitly permitted such use to continue. An employee of the telephone company, in mounting the pole to ascertain the condition of the telephone lines, was fatally injured by coming in contact with a wire belonging to the other company which was dangerously placed or defectively insulated. The suit was against the light, heat and power company. It was held that there was no mutuality between the two companies and that the injured employee

of the telephone company was not on the pole in pursuance of an implied invitation from the defendant, but as a volunteer or mere licensee "who used the pole subject to all the concomitant conditions and perils and to whom the sole duty of the defendant was abstention from inflicting intentional or wanton or wilful injury."

The demurrer in the case before us admits the allegation of fact that the spikes projecting from the pole afforded a convenient method of ascent, but it does not have the effect of conceding as a conclusion of law that the plaintiff was thereby impliedly invited to visit the defendants' overhead fixtures. There could be no possible doubt in the mind of any observer that the spikes were intended for the exclusive use of those engaged in the work of keeping the equipment in order. The very nature of the appliances and of the service in which they were employed made it apparent that their use or occupation by strangers would not be in accord with the interests of those operating the franchise. It is perfectly obvious, therefore, that there was no mutuality of interest between the defendants and the deceased which would enable us to hold that his ascent of the pole was induced by an implied invitation.

In *Simonton* v. *Light & Power Co.,* 28 Texas Civil Appeals, 374; 67 S. W. 530, a child seven years of age was injured by falling from the defendant's pole which it was climbing by means of spikes arranged like those in the present case. It was contended that the provision thus made for ascending the pole constituted an attraction to children, but the Court rejected this theory and sustained a demurrer to the declaration.

There is a very broad difference between the case now under consideration, where the injury occurred at a place intended for exclusive possession by those maintaining the fixtures alleged to be unsafe, and the class of cases in which the appliances causing the injury were so placed as to be dangerous to persons who might be reasonably expected to

come in close proximity to them while occupying adjacent premises or positions. The case of *Ziehm* v. *United Electric L. & P. Co.,* 104 Md. 48, illustrates this distinction. In that case several wires of the Light and Power Company were strung quite near a telephone pole, and while a lineman of the telephone company was descending the pole his hand struck against one of the former company's wires, which was defectively insulated at that point, and he was injured by the current. In his suit against the Light and Power Company it was held that the plaintiff was in the exercise of a duty that required him to go upon the pole, and that it was incumbent upon the defendants to have its lines so placed and insulated as to enable him to perform his work in safety. The same rule was applied to analagous facts in *Hipple* v. *Edison Electric Illuminating Co.,* 240 Pa. 91; 87 Atl. 297. In *Brown* v. *Edison Electric Co.,* 90 Md. 400, a boy who was engaged in cleaning a rain spout at the edge of a narrow roof over the front window of a store was injured as the result of accidentally touching with his head an uninsulated part of an electric light wire suspended about seven inches from the roof. The company owning the wire was sued on account of the accident, and the Court said that the nature of the business conducted by the defendant "imposed upon it a legal duty toward every person who, in the exercise of a lawful occupation in a place where he had a legal right to be, was liable to come in contact with the wires charged with this invisible but deadly power." It was held that as the boy was engaged in the service which he had a right to perform at a place where he was entitled to be when he was injured, and the evidence did not prove contributory negligence on his part, the case was a proper one for submission to the jury. In *Mullen* v. *Wilkes-Barre Gas & Electric Co.,* 229 Pa. 54, 77 Atl. 1108, and *Temple* v. *McComb City Electric L. & P. Co.* (Miss.), 42 So. 874, the defendant companies were held liable for injuries sustained by boys who

in climbing trees in public streets came in contact with improperly insulated wires strung through the branches.

In all of the cases we have examined on this subject in which the asserted liability was enforced the person involved in the accidents were not trespassers or mere licensees on the defendant's property, but were in adjacent positions where they might be reasonably expected to come in close proximity to the source of danger. Where, however, as in the present case, those engaged in the distribution of electric current have placed their wires above and beyond the sphere of peril to the public and to the occupants of neighboring premises, it would be subjecting them to an unduly strict responsibility to require them to provide against the possibility that their own appliances might be utilized by strangers as a means of access to the conditions which prove to be injurious.

The averments of the declaration do not, in our opinion, present a state of facts which, upon any just theory, can be held to impose liability upon the defendants, and we concur in the action of the trial Court in sustaining the demurrer

*Judgment affirmed, with costs.*