STATE, Use of Wilbur E. Potter et al., *v.* WILLIAM M. LONGELEY et al.
[Nos. 43, 44, October Term, 1931.]

564

*Decided January 14th, 1932.*

The cause was argued before BOND, C. J., PATTISON, URNER, ADKINS, OFFUTT, PARKE, and SLOAN, JJ.

*John B. Gontrum* and *William H. Maynard,* with whom was *Edwin K. Gontrum* on the brief, for the appellant.

*Stevenson A. Williams* and *William H. Lawrence,* with whom was *Fred R. Williams* on the brief, for the appellees.

ADKINS, J., delivered the opinion of the Court.

These appeals are from judgments in favor of defendants on demurrers, the plaintiffs refusing to amend their declarations.

The two records are substantially identical. The explanation seems to be that two suits were necessary because two of defendants reside in Harford County and one in Baltimore City.

The declarations contain three counts, the first of which alleges that defendants, on September 5th, 1929, owned, kept,

and maintained a large quarry, which had been abandoned and was not actively operated at the time, near Biddison Lane and Belair Road in the City of Baltimore, in a thickly built up section of the city, with dwelling houses almost surrounding it, and with city streets, including the Belair Road, a heavily traveled thoroughfare, nearby, and within a short distance of two schools; that said quarry had almost perpendicular walls of great height, and that the defendants permitted the bottom of the quarry to become covered with water of considerable depth, and, with the implied invitation to said quarry and with direct knowledge that young children were constantly playing in and about said quarry, permitted the said premises to become and remain as an attractive nuisance to children of tender and immature years, and that on the said date the defendants negligently, carelessly and recklessly failed to properly inclose the premises by a fence, and, with the knowledge that young children were constantly playing in and about said quarry, negligently and carelessly permitted said premises to remain unguarded and without notice or other warnings to children so using said premises of the dangerous, unsafe and improper condition thereof; that the defendants negligently placed and permitted a large cable to be and remain as a means of ingress and egress to and from said quarry, permitted water to accumulate on the bottom thereof of considerable depth, permitted a dangerous, defective and unsafe raft or float to remain on the waters; that the twelve-year-old infant son of plaintiffs entered in and upon the premises through a defective fence, and by means of said cable descended to the bottom of the quarry and attempted to use the dangerous, defective and unsafe raft, and by reason of all the aforesaid negligence of defendants was thrown or fell from said raft into the water, where he was drowned, all of this while the said infant was using due care and caution, whereby the plaintiffs, his parents, have been deprived of his services; that the injuries which resulted in the death of said infant were directly caused by the negligence of defendants without negligence or want of care on the part of said infant directly thereto contributing.

The second count is like the first, with the additional allegation that defendants failed to properly inclose said premises as required by Ordinance No. 231, codified as sections 125 to 128, inclusive, of article 32 of the Baltimore City Code of 1927, which requires each and every owner of abandoned or not actively operated quarries within the city limits to inclose by a fence, not less than six feet in heighth, constructed in such manner and of such materials as will prevent any person from entering upon said quarry.

The third count is like the second, except that it omits the allegations that defendants permitted the premises to become and remain as an attractive nuisance to children, and alleges that, in violating said ordinance in failing to completely fence in said quarry, leaving a space of fifty feet or more, without an adequate fence, the defendants permitted and encouraged infant children, including plaintiffs' deceased son, to gain access to said quarry, and that said violation of the ordinance was the direct and proximate cause of the accident.

The doctrine of attractive nuisance has never been applied in this state, although this court has had before it at least three appealing cases in which it was strongly urged that the doctrine was applicable. *Grube v. Baltimore,* 132 Md. 355, 103 A. 948, 951; *Baltimore v. De Palma,* 137 Md. 179, 112 A. 277, 279; *State, use of Lease, v. Bealmear,* 149 Md. 10, 130 A. 66. It was said in the *Grube* case, *supra,* that it might be justly applied in some cases. But, as it was not applied in that case, it is safe to say that it would not be applied here under ordinary circumstances. There a pole was erected in a schoolyard by the defendant for the purpose of carrying electric current to the schoolhouse; it was erected about a foot from the fence, and from the top of the fence the boy, about ten years old, was able to reach spikes driven in the pole, and intended for the use of employees, and thus to climb to the top, where he came in contact with a wire and was seriously injured. The schoolyard was used as a playground, and the boys frequently climbed on the pole. In the opinion, written by Chief Judge Boyd, it was said: "Children should receive all reasonable protection from the courts,

but however much such an injury as this boy sustained is to be regretted, it does not justify mulcting innocent people or corporations in damages for injuries sustained by a boy over ten years of age who had no right to do what he did do." It was further said that "the decision in *Stansfield v. Ches. & Pot. Tel. Co.,* 123 Md. 120, 91 A. 149, conclusively establishes the fact that there can be no liability in this case, unless there must be some exception to the general rule there clearly announced, by reason of the age of the plaintiff," and as to the age the court commented on the fact that there was nothing in the record to show that the boy was mentally deficient for one of his age.

In the *Stansfield* case, *supra,* the pole supporting wires carrying electric current for telephone and lighting purposes was in one of the highways passing through Ellicott City, and was in front of the dwelling occupied by Harry Stansfield and his family. There were spikes in the pole intended for the use of defendant's employees, and it was alleged in the *narr.* that various persons, including Stansfield, as the defendant well knew, had been accustomed to use the spikes to climb the pole, in order to recover property and for other purposes; that the defendant negligently permitted the insulation on some of the wires to be insufficient; that a pet kitten of Stansfield's children had climbed the pole, and he, "relying upon said invitation and representation of the defendant, ascended the pole by means of the spikes for the purpose of recovering the kitten"; that the spikes, being conveniently arranged for such use, operated as an invitation to the public, whenever they might have occasion to do so for any proper purpose, and that the spikes constituted a representation that the ascent of the pole might be accomplished with safety. The demurrer to the *narr.* was sustained, and this court, on appeal from the judgment entered on the demurrer, held, in an opinion by Judge Urner, that the principle of implied invitation is not applicable to those who receive injuries on premises they have entered from motives which have no relation to the business or interest of the proprietor; that "the most favorable view of the case from the standpoint of the

declaration is that the defendant passively permitted the use of the pole by the deceased and others for the purposes mentioned. This might relieve them of the character of trespassers, but would leave them in the position of mere licensees, to whom the defendants would owe only the duty to avoid exposing them willfully to the risk of injury"—citing *Benson v. Baltimore Traction Co.,* 77 Md. 535, 26 A. 973.

We have quoted somewhat at length from the *Stansfield* case, where the attractive nuisance doctrine was not directly involved, because it was held in the *Grube* case that the decision there was controlled by the principle announced in the *Stansfield* case, and applied that principle to the case of a boy about ten years old. In the *Stansfield* case, Judge Urner cited with approval *Simonton v. Light & Power Co.,* 28 Tex. Civ. App. 374, 67 S. W. 530, where a child seven years old was injured by falling from the defendant's pole which it was climbing by means of spikes, and where it was contended that the provision thus made for ascending the pole constituted an attraction to children, but the court sustained a demurrer to the declaration.

In the *De Palma* case, *supra,* a boy ten years old was injured by lumber falling from a pile along a passageway between piles of lumber on a lumber pier in Baltimore City on which the public were permitted to go for any lawful purpose. In the opinion of the court, written by Judge Thomas, the case of *Maenner v. Carroll,* 46 Md. 212, was cited, where the declaration alleged that the defendants were the owners of an open or uninclosed lot within the limits of the City of Baltimore, and that persons were in the habit of passing over the same, that the defendants cut on said lot, in a dangerous and exposed portion thereof, a deep excavation, and left the same in a dangerous condition, and liable to injure persons in passing over the lot, and that plaintiff, while passing over the lot at night, fell in said excavation and was injured. In holding this count bad on demurrer, the court, in an opinion by Judge Alvey, said: "To constitute a good cause of action, in a case of this nature, there should be stated a right on the part of the plaintiff, a duty on the part of the defendants

in respect to that right, and a breach of that duty by the defendants, whereby the plaintiff has suffered injury. * * * The fact that persons were in the habit of passing over the lot gave to the plaintiff no right to do so; and unless there was such right there was no breach of duty on the part of the defendants in cutting and leaving open the excavation." We held in the *De Palma* case that the principles announced by Judge Alvey were conclusive against the plaintiff, and that the doctrine of attractive nuisances was not applicable. Another count of the declaration in the *Maenner* case, *supra,* was held insufficient, which alleged that for many years the defendants had permitted all persons to cross said lot at pleasure.

There are two conclusive reasons why the attractive nuisance doctrine is not applicable to the facts of this case: (1) The boy was twelve years old, and it is not alleged in the *narr.* that he was mentally subnormal. (2) It is not alleged that the quarry was in sight of any place the boy had a right to be, or that he could obtain a view of it without becoming a trespasser.

But it is strongly contended by appellants that, apart from the attractive nuisance doctrine, the demurrer should have been overruled because it alleged a violation of an ordinance, and that such violation was the proximate cause of the injury.

Whatever may be said in support of the position that a civil right of action may accrue to one suffering an injury as the result of the violation of an ordinance regulating the use of property, in any event, before such right can arise, it must be shown, at least: (1) That the violation of the ordinance was the proximate cause of the injury. (2) That the person injured, at the time of the injury, had the right to be on the property of defendant and was not a trespasser.

The ordinance in this case was passed for the benefit of the public. Any violation of it subjects the owner of a quarry to a fine. But, before an individual can hold such owner liable for an injury alleged to have resulted from such violation, there must be shown a right on the part of the plaintiff, a duty on the part of the defendant with respect

to that right, and a breach of that duty by the defendant whereby the plaintiff has suffered injury. *Maenner v. Carroll, supra.* A trespasser can acquire no such right except in case of willful injury. The mere violation of a statute would not give it. The effect of such violation is only to raise a presumption of negligence in favor of one entitled to assert it. See an interesting discussion in 27 *Harvard Law Review,* p. 333.

"The owner or occupier of real property is under no obligation to make it safe, or to keep it in any particular condition for the benefit of trespassers, intruders, mere volunteers, or bare licensees." 1 *Thompson on Negligence,* par. 945.

In the present case the unfortunate boy was a trespasser. "The fact that persons were in the habit of passing over the lot, gave to the plaintiff no right to do so." *Maenner v. Carroll, supra.* But, if this were not so, the plaintiffs could not recover in this case because their decedent was clearly guilty of contributory negligence, if, as to him, the defendants were negligent. The *narr.* alleges that it was a dangerous place, and there is no allegation that it was hidden. For the reasons we have given in our opinion, the demurrer was properly sustained. A number of other reasons, some of which appear to be substantial, were urged by appellees in support of the rulings appealed from, but it will not be necessary to pass on them.

> *Judgment affirmed, with costs to appellees in No. 43; appellees to pay cost of record in No. 44.*

OFFUTT, J., concurs in the conclusion.