HOME INSURANCE COMPANY *v.*
Bobby Jack SPEARS and Shirley Jean SPEARS et al

CA 79-136                    590 S.W. 2d 71

Opinion delivered November 14, 1979
Released for publication December 5, 1979

*Davis, Bassett, Cox & Wright,* for appellant.

*Everett & Whitlock,* for appellees.

M. STEELE HAYS, Judge. This is an action in tort arising as the result of personal injuries suffered by the appellees — Bobby Jack Spears, Rex England and Donald Jackson. The injuries occurred when the three, who were area farmers, fell from a bridge belonging to Washington County. Appellees and a number of other farmers had gathered to observe pollution tests which were being conducted on the creek below. In order to observe the tests, the three men were either sitting upon or leaning against the iron railings located on each side of the bridge. The railings collapsed, and the appellees fell into the creek bed below, causing the personal injuries complained of.

The jury returned a verdict for the appellees, but found that they were guilty of contributory negligence to the extent of 25%, and the damages were reduced accordingly. The amount of the judgment for each of the appellees after reduction was as follows:

Bobby Jack Spears — $30,000

Shirley Jeanne Spears (his wife) — $750

Donald Jackson — $30,000

Shirley Jean Jackson (his wife) — $1875

Rex England — $6375

From this judgment, the defendant, Home Insurance Company, appeals, asserting five points for reversal.

The first point raised by the appellants is that the trial court erred in refusing to grant appellant's motion for a directed verdict. Specifically, the appellants allege that the three appellees were mere licensees while on the bridge and therefore, were owed no duty by the county except to avoid harming them by wilful and wanton misconduct. The testimony indicated that the appellees went to the bridge primarily for the purpose of watching the pollution tests being conducted. Hence, the appellant argues that the appellees did not use the bridge for its intended purpose: as a means of transit. The appellant also argues that since the county received no benefit from the appellees being on the bridge, then their status, while there, was inevitably that of licensee.

We cannot agree. All of the cases cited in the appellant's brief, with one exception, are cases which come under the Federal Tort Claims Act. 28 U.S.C.A. § 2674 states that the United States shall be liable, "respecting the provisions of this title relating to tort claims, in the same manner and to the same extent as a *private individual* under like circumstances." Hence, in many instances, the Federal courts are applying the economic benefit test, that is, whether the owner of the premises receives some pecuniary gain, either real or potential, by the plaintiff's presence on his land, to determine the status of the plaintiff as either licensee or invitee.

However, an alternative theory in determining the status of the plaintiffs is the "invitation test." In the latter case, a person becomes an invitee when the premises are made open to the public, and he enters pursuant to the purposes for which they are thrown open. There must be some basis for the person believing that the premises have been made safe to receive him. However, when the premises are made open to the public, the assurance will be implied. This second theory is now accepted by a clear majority of the courts. *Bunnell* v. *Waterbury*, 103 Conn. 520, 131 A. 501 (1925); *Dowd* v. *Portsmouth Hospital*, 193 A.2d 788 (N.H. 1963); *Smyke* v. *State*, 117 N.Y.S.

2d 163, 203 Misc. 186; *Guilford* v. *Yale University,* 128 Conn. 449, 23 A. 2d 917 (1942). [See also 65 C.J.S. *Negligence* § 63 (41) and Prosser on *Torts* 4th Ed., pp. 388-390.] Some jurisdictions have gone so far as to reject the distinction between licensee and invitee and apply a simple negligence standard, regardless of the status of the plaintiff. *Rowland* v. *Christian,* 70 Cal. Rptr. 97, 443 P. 2d 561 (1968); *Mile High Fence Company* v. *Radovich,* 175 Colo. 537, 489 P. 2d 308 (1971); *Pridgen* v. *Boston Housing Authority,* 308 N.E. 2d 467 (1968); *Peterson* v. *Balach,* 294 Minn. 161, 199 N.W. 2d 639 (1972).

In the instant case, the property upon which the appellees were injured was a public bridge. Guard rails were placed on either side of the bridge, and the evidence presented at trial indicated that they were improperly installed. Although the appellant argues that the rails were not used for their intended purpose since the appellees were either sitting or leaning upon them, we believe that this question properly addressed itself to the jury. It was for the jury to decide whether, under all the circumstances, there was negligence. We believe that the trial judge properly denied appellant's motion for a directed verdict and submitted the issue to the jury upon a correct instruction of the law.

Appellant's second point for reversal is that the trial court erred in permitting testimony concerning an offer to pay medical expenses and an offer to settle the claims. Evidence was introduced by the appellees, over appellant's objection, of Mr. England's testimony concerning a conversation between the Washington County Judge and Mr. England, in which the county judge told him to bring all of his medical bills and "the insurance company would pay it." Rule 409 of the Uniform Rules of Evidence states:

> Evidence of furnishing, offering or promising to pay medical, hospital, or similar expenses occasioned by an injury is not admissible to prove liability for the injury.

If there were doubt as to the purpose for which this evidence was offered, the record clearly indicates that appellee's purpose was to introduce evidence on the question of liability. The appellee admits that the testimony was "simply to show the issue of liability." (Tr. 583).

Recently, the Arkansas Supreme Court has had the opportunity to interpret this rule in *Ferguson* v. *Graddy,* 263 Ark. 413, 565 S.W. 2d 600 (1978). In that case, Justice Fogleman, speaking for the majority, stated that the intent of the rule is that it is in the best interest of the society ''that humanitarian and benevolent instincts need not be hobbled by the hazard that assistance to an injured person be taken as admission of liability in a personal injury action.''

Under the rule as stated, this evidence should not have been received over appellant's objection and its prejudicial impact on the issue of liability must be assumed.

The appellants also allege that the trial court erred in refusing to give the jury a modified version of AMI 612, dealing with the assumption of the risk. We do not agree. Upon instructing the jury as to the defense of assumption of the risk, there must be some evidence upon which the jury can find that the plaintiffs had knowledge and appreciation of danger which they allegedly assume. *Mercury Mining Company* v. *Chambers,* 193 Ark. 771, 102 S.W. 2d 543 (1937). In this case, there was no such evidence. There was no evidence to show that plaintiffs knew the guard rails were defective and might break if leaned upon. We hold that the jury was given proper instructions on contributory negligence and that there was no evidence upon which an assumption of the risk instruction would be justified.

Finally, appellant would have us reverse on two further arguments: that the court erred in permitting an economist to testify as the amounts a farm worker might have been expected to earn projected over the work expectancy of the plaintiffs, and that it was error to instruct the jury as to that part of AMI 2206 which relates to the recovery of past and future earnings or profits. We deem it unnecessary to discuss the second point for the reason that the case must be retried and the propriety of AMI 2206 will depend upon the evidence presented at the second trial rather than in the record before us. As to the other part of the argument, no error by the trial judge occurred in refusing to strike the testimony of Dr. Phillip Taylor. Dr. Taylor simply testified as to the approximate gross earnings farm laborers of the ages of the

respective plaintiffs could expect to earn at current wage levels over the remainder of their productive years. The evidence had a reasonable relevancy to the issue of damages and cannot be said to be immaterial even though the plaintiffs operated their own farm units and therefore their earnings would be affected by market considerations, weather conditions, their own efficiency, et cetera. The plaintiffs also contributed their own labor in the farming operation, and the jury was entitled to hear evidence dealing with the value of farm labor. At least as early as 1895, Arkansas has recognized the loss of earning capacity as a proper matter of inquiry in personal injury cases. *Railway Company* v. *Dobbins*, 60 Ark. 481 (1895). See also *Arkansas Power & Light* v. *Tolliver*, 181 Ark. 790 (1930).

Corpis Juris Secundum, *Damages*, Sec. 87(b), p. 958, states:

> The measure of damages for the diminution of one's capacity to earn money, or for loss of future earnings, involves numerous considerations as a broad general rule. All evidence tending to show the character of plaintiff's ordinary pursuits and the extent to which the injury was prevented, or will prevent him from following such pursuits is admissible.

Evidence which may be of help to a jury in weighing the issue of damages should be admitted even though it fails to provide a mathematical valuation of the impairment. *Leave* v. *Boston Elevated Railway Company,* 28 N.E. 2d 483 (Mass. 1940). Further, the admissibility of this evidence was within the sound discretion of the trial judge, and that discretion was not misused. *Little Rock Gas & Fuel Company* v. *Coppedge,* 116 Ark. 334 (1914); *Arkansas Power & Light Company* v. *Johnson,* 260 Ark. 237, 538 S.W. 2nd 541 (1976).

The judgment is reversed and remanded.