TIMOTHY PAUL MURPHY *v.* BALTIMORE GAS AND
ELECTRIC COMPANY

|No. 59, September Term, 1980.|

\* \* \*

DOUGLAS SMITH ET UX. *v.* REEDERS MEMORIAL
HOME, INC. ET AL.

|No. 87, September Term, 1980.|

*Decided April 23, 1981.*

The causes were argued before MURPHY, C. J., and SMITH, DIGGES, ELDRIDGE, COLE, DAVIDSON and RODOWSKY, JJ.

No. 59 — *Joseph B. Harlan,* with whom were *Klein, Harlan & Knust* on the brief for appellant. No. 87 — *John C. Armor* for appellants.

No. 59 — *Robert A. Amos,* with whom were *Clifford E. Schulte* and *James A. Biddison, Jr.,* on the brief, for appellee. No. 87 — *M. Bradley Hallwig,* with whom were *Anderson, Coe & King* on the brief, for appellee Reeders Memorial Home, Inc. Submitted on brief by *Leonard S. Jacobson, County Solicitor,* and *James G. Beach, III, Assistant County Solicitor,* for appellee Baltimore County.

DIGGES, J., delivered the opinion of the Court. DAVIDSON, J., concurs in part and dissents in part. DAVIDSON, J., filed an opinion concurring in part and dissenting in part at page 196 *infra.*

These two independent appeals bring before this Court issues relating to the tort liability of owners of property to those injured while using it. Since the contentions being made here by the appellants in both actions are essentially

legal in nature and either identical or closely related, we deem it expedient to dispose of the two appeals in one opinion. A brief summary of the unfortunate historical facts of each action will suffice.

In the first case we ponder, appellant Timothy Paul Murphy obtained a judgment in the amount of $150,000.00 following a jury trial in the Superior Court of Baltimore City for damages sustained when his hand came in contact with an electrical transformer owned by appellee Baltimore Gas & Electric Company. Judge Greenfeld, who presided at the trial, after determining that the evidence was legally insufficient to support the verdict, entered a judgment N.O.V. in favor of the electric company, and we granted certiorari prior to the intermediate appellate court's consideration of Murphy's appeal. The accident out of which this proceeding arises occurred on February 4, 1977, after Mr. Murphy and his wife emerged from the Brunswick Cedonia Bowling Lanes on Hamilton Avenue in Baltimore City at around 9:00 p.m. and proceeded to their vehicle located in Brunswick's adjacent parking lot. Upon observing that the citizen's band radio was missing from his newly purchased vehicle, this apellant approached several teenage children standing near the side of the bowling alley whom he believed might have knowledge of the disappearance. As he advanced, Mr. Murphy heard a "clanking" noise which he thought sounded like the closing of the top of a trash dumpster, so, when a discussion with the youths proved not to be helpful, he proceeded toward what he thought was a rubbish receptacle located at the side of the building to determine whether the CB radio had been disposed of there. The area surrounding what was in reality a high voltage electrical transformer was dark, and it was for this reason that appellant was unable to see the doors equipped with locks on the front of the unit. The transformer, surrounded on three sides by a brick wall attached to the building, was situated on a concrete support slab imbedded in the ground, with a protective metal pole centered in the opening to the pad. When Mr. Murphy lifted the top of the container about a foot, causing it to slide off the rear, he was unable

to observe anything but darkness inside the unit.[1] He then returned to the bowling alley, and waited for the police to respond to a call made by a friend on his behalf. Apparently becoming somewhat impatient when the police failed to arrive after twenty minutes, this appellant reapproached the container, lit two matches in an attempt to see whether his radio lay within it, and received a severe electric shock when his hand came in contact with the transformer located within the unit.

The other case we consider arose out of the death by drowning on October 7, 1977, of $3^{1}/_{2}$ year old Christopher Smith in a pond belonging to appellee, Reeders Memorial Home, Inc. Since the appeal brings into question the propriety of the Circuit Court for Baltimore County granting both Reeders' demurrer and co-appellee Baltimore County's motion raising preliminary objection, we assume the truth of the facts alleged in appellants' amended declaration. The parcel of land on which the "abandoned quarry" known as "Becky's Pond" is situated is adjacent to an apartment building where appellants Douglas and Pamela Smith lived with their victim child. The pond, for some twenty years, had been utilized by residents of the neighborhood for recreational purposes. Reeders, having knowledge of this use, posted "no trespassing" signs and erected a barbed wire fence around the property at some point in the past, but, by the time of Christopher's death, the signs had disappeared and the fence had fallen into such disrepair that uninhibited access to the parcel existed. These appellants additionally alleged that two other children have drowned in the pond during the preceding decade, and that the failure to maintain a fence is a violation of the Baltimore County Code. The Smiths also joined Baltimore County as a defendant, alleging that this political entity deliberately failed to require that Reeders provide a fence complying with

---

1. As to why Mr. Murphy was able to raise the top, the electric company offered expert testimony of a metallurgist to show that the tabs and welds affixing the top of the transformer to its container were bent and broken, and that the fractures occurred within the two weeks preceding the examination, which was conducted ten days after the mishap.

county law, and prevented that appellee from draining the pond, in order that the County could purchase the property at a reduced price. In this way, it is alleged, the County (as well as Reeders) "deliberately us[ed] the possibility of another death as a bargaining point in an effort to gain an economic advantage of $20,000.00 or more with respect to the other." A motion raising preliminary objection filed by the County grounded on that body's claimed immunity was granted, and Reeders' demurrer was sustained without leave to amend. When the Smiths appealed, we issued our writ of certiorari before the Court of Special Appeals decided the issues presented.

The previous decisions of this Court well document that in Maryland, while required to provide ordinary care for an invitee, owners of real and personal property have consistently been held to owe no duty to a trespasser, except to abstain from willfully or wantonly injuring or entrapping such a person. *E.g., Sherman v. Suburban Trust,* 282 Md. 238, 241-42, 384 A.2d 76, 79 (1978); *Bramble v. Thompson,* 264 Md. 518, 521-22, 287 A.2d 265, 267 (1972); *Osterman v. Peters,* 260 Md. 313, 314, 272 A.2d 21, 22 (1971); *Hensley v. Henkels & McCoy, Inc.,* 258 Md. 397, 398, 265 A.2d 897, 898 (1970) (in which Judge Smith for the Court exhaustively reviewed the applicable law of this and other states); *Hicks v. Hitaffer,* 256 Md. 659, 666-68, 261 A.2d 769, 772 (1970); *Mondshour v. Moore,* 256 Md. 617, 619-20, 261 A.2d 482, 483 (1970); *Fopma v. Bd. of County Comm'rs,* 254 Md. 232, 234, 254 A.2d 351, 352 (1969); *Herring v. Christensen,* 252 Md. 240, 241, 249 A.2d 718, 719 (1969); *Carroll v. Spencer,* 204 Md. 387, 391-94, 104 A.2d 628, 630-31 (1954); *State v. Machen,* 164 Md. 579, 582-83, 165 A. 695, 696 (1933); *Stansfield v. C. & P. Tel. Co.,* 123 Md. 120, 123-25, 91 A. 149, 150 (1914) (no liability to man who was electrocuted while climbing a telephone pole located on or over public property to rescue kitten). And this is true even though the trespasser be a child of tender age. *Osterman v. Peters, supra* (4½ years); *Mondshour v. Moore, supra* (6 years); *Hensley v. Henkels & McCoy, Inc., supra* (10 years); *Carroll v. Spencer, supra* (8 years); *Fopma v. Bd. of County Comm'rs, supra* (7

years); *Herring v. Christensen, supra* (3 years). Being fully aware that this great array of authority (which could have been expanded), constitutes virtually an impregnable barrier to their recovery in these cases, appellants invite this Court to abolish the common law distinctions between the duties owed the various classes of users of another's property in favor of applying the general negligence standard to all. At least with respect to trespassers, the status of the injured parties in the two cases here, we decline this entreaty.[2] The basis for the existing allocation of responsibility between owner and trespasser, reaffirmed today, has so frequently been broadcast by this Court over the last century that it would be superfluous to do more here than refer those interested to the cases earlier cited and the authorities relied on in each.[3]

Each appellant, recognizing the possibility that we will not alter the common law with respect to an owner's responsibility to trespassers, claims the existence of an exception which, it is insisted, renders the general rule of no liability inapplicable to his case.

We initially consider Mr. Murphy's claim. He asserts that under the abutting owner principles iterated in *Pindell v. Rubenstein,* 139 Md. 567, 115 A. 859 (1921), the electric company is responsible for his injuries and the jury verdict should be reinstated. Mr. Murphy can gain no solace from *Pindell,* where a young boy was injured by a gate that fell on him as he walked along the adjacent public sidewalk. The Court there explained that even assuming the child had climbed upon or otherwise come into contact with the gate,

---

**2.** There are a number of jurisdictions that seemingly have merged the duty due an invitee and licensee, on the theory that each is using the property with permission of the owner (not true of a trespasser), and as to these two categories, have applied a general negligence standard. See Dooley, *Modern Tort Law I,* § 19.01, p. 376-77 (1977) (and cases gathered therein).

**3.** Whether the property being used is personalty or realty is of no consequence in the present cases because it is clear that the same common law rule applies to both types of property. Bramble v. Thompson, 264 Md. 518, 521, 287 A.2d 265, 267 (1972); Hensley v. Henkels & McCoy, Inc., 258 Md. 397, 411, 265 A.2d 897, 905 (1970) (and cases cited in each).

. . . it is the duty of an abutting owner, maintaining structures *along and adjacent to a highway,* to use reasonable care to see that they are kept in such a condition as not to endanger the safety of *persons engaged in the reasonable and lawful use of the highway.* In measuring the extent of that duty we must be mindful of the fact that the public highways are the common and universal avenues of travel and communication for the entire public, and they may lawfully be used by children of tender ages, by the aged and infirm and by persons suffering from physical disability. Having in mind those considerations, it would be unreasonable to hold that an abutting owner could maintain *a structure immediately adjacent to the highway* in such a position that a person *travelling along the highway* could by merely taking hold of it cause it to fall and injure him, without being guilty of negligence and responsibility for the damage thus caused. Such a theory would, in the light of common experience of the manner in which highways are used, be contrary to the public safety and welfare. Persons may touch or even take hold of *the structures lining a public highway* under an infinite variety of circumstances without being thereby guilty of negligence. As for instance a traveler might stumble or make a misstep, or be suddenly overcome by illness and lean or take hold of the structure for support, or in the case of a child it might touch or take hold of it thoughtlessly. And in doing these commonplace and ordinary things such persons cannot lawfully be subjected to the perils of serious bodily injury through the collapse or fall of the object thus casually touched or grasped merely because it was not actually within the highway, but on the contrary the maintenance of such dangerous agencies, which may be little else than traps, constitutes a violation of the duty owed by the abutter to the public. [139 Md. at 580-81, 115 A. at 864 (citations omitted and emphasis added).]

Since the accident in this case did not involve an instrumentality along or adjacent to a public highway, nor the injury occur to one engaged in the lawful and reasonable use of such a way, the principle announced and discussed in *Pindell* is inapplicable. In addition, we note that the intrusion of Mr. Murphy was of a different order than what was contemplated by the *Pindell* court, since the actions in the case before us constituted a substantial and deliberate trespass upon the electric company's property caused by neither emergency nor inadvertence. Mr. Murphy's claim does not lie within the ambit of *Pindell.*

Utilizing the facts present in their case, appellants Smiths hypothesize that a landowner is

> liable for the death of a trespassing 3½ year old child, where the landowner has permitted constant public access for ten years in part to cause sale of its property, where the landowner has failed to fence the land as required by law, in order to save itself money, and where the landowner was aware that these conditions had caused the prior deaths of two other children, and would eventually cause the present death.

On its face, it would seem that the appellants request this Court to create an exception to the trespasser rule based on the coalescence of these alleged extraordinary facts. If this be the implication, we reject it out of hand since this Court would be extremely reluctant to recognize an exception posited on such near unique circumstances. However, the argument being made may encompass: (i) that the violation of a statute designed to physically protect users of property (in this case, an ordinance requiring a fence or other enclosure around bodies of water) constitutes a breach of duty owed to all users of the property including trespassers; and (ii) that what is frequently denominated the "attractive nuisance doctrine" or something closely akin to it should be adopted in this State, so as to permit recovery when an otherwise trespassing child of tender years is injured. We believe the decisions of this Court in *Osterman v. Peters,* 260 Md. 313, 272 A.2d 21 (1971), and *State v. Longeley,* 161 Md.

563, 158 A. 6 (1932), are factually so similar to the Smith case facts that the law we found applicable in these earlier cases controls our disposition of both contentions. In *Osterman,* the four and one-half year old son of the plaintiff drowned when he fell into a swimming pool in the yard of a neighbor's vacant house while attempting to retrieve a ball that had gone over the fence and onto the neighbor's property. A county code provision required that private pools be fenced, and have a gate equipped with a self-closing and self-latching device. Though the pool was fenced, there was testimony the gate was kept closed by placing a stone in front of it. The young lad pushed the stone aside to gain access to the pool area itself and we assumed for purposes of our decision that there was a statutory violation with respect to the required enclosure. In *Longeley,* the 12 year old infant son of the plaintiff drowned in an abandoned quarry filled with water and it was alleged that the defendant who owned the quarry negligently failed to adequately fence the property as required by the applicable city ordinance. The teachings of these two cases are combined and explained in *Osterman* when the Court, while noting the distressing situation presented, utilized the words and reasoning of the *Longeley* court in explaining:

> "The ordinance in this case was passed for the benefit of the public. Any violation of it subjects the owner of a quarry to a fine. But, before an individual can hold such owner liable for an injury alleged to have resulted from such violation, there must be shown a right on the part of the plaintiff, a duty on the part of the defendant with respect to that right, and a breach of that duty by the defendant whereby the plaintiff has suffered injury. A trespasser can acquire no such right except in case of willful injury. The mere violation of a statute would not give it. The effect of such violation is only to raise a presumption of negligence in favor of one entitled to assert it."

> For these reasons, we conclude that Dr. Osterman could no more take his case from under the Maryland rule than could the plaintiff in *Hensley v.*

*Henkels & McCoy, Inc., supra,* 258 Md. 397, who attempted to do so by alleging that the contractor knew that the area where the accident occurred was customarily traversed by children. [*Osterman v. Peters, supra* at 316-17, 272 A.2d at 23 (quoting *State v. Longeley, supra* at 569-70, 158 A. at 8 (citations omitted).]

Moreover, the "attractive nuisance doctrine" has been expressly rejected in this State. *Osterman v. Peters, supra* at 315, 272 A.2d at 22; *Hensley v. Henkels & McCoy, Inc., supra* at 411, 265 A.2d at 905.

The Smiths' claim of responsibility on the part of Baltimore County for young Christopher's death is similarly without merit. The duty of a political entity to enforce the law is manifestly that type of "discretionary policy-making, planning or judgmental governmental" function for which a county is, unless waived, ordinarily immune from suit. *James v. Prince George's County,* 288 Md. 315, 418 A.2d 1173 (1980). While it is true that a governmental body performing acts not of this type, in some circumstances, may be liable in tort, the mere receipt of financial benefit in the form of land purchased at a reduced cost is not sufficient to metamorphose what is otherwise a discretionary governmental function into one for which there can be tort liability. The trial court was correct in its rulings on both the demurrer and the motion raising preliminary objection.

The law is clear that no plaintiff here can recover. As we have frequently said before, if there is to be a change in the law with respect to the duty owed a trespasser by a property owner, we think the Legislature should make it. The judgments as entered in each of the two cases before us will be affirmed.

> *Judgment of the Superior Court of Baltimore City in Case No. 59 affirmed.*
> *Costs to be paid by appellant.*
> *Judgment of the Circuit Court for Baltimore County in Case No. 87 affirmed.*
> *Costs to be paid by appellant.*

*Davidson, J., concurring in part and dissenting in part:*

In these cases, both of which deal with the status of injured parties who were trespassers, the majority refuses to abolish the common law distinctions in a landowner's or occupier's duty toward an invitee, licensee, or trespasser. Consequently, the majority refuses to apply the traditional principles of negligence, including the standard of reasonable care under all the circumstances, to trespassers. I respectfully dissent.

As long ago as 1959, the United States Supreme Court recognized the decreasing viability of the common law approach that premised a landowner's liability upon the status of the injured party. In *Kermarec v. Compagnie Generale Transatlantique,* 358 U.S. 625, 630-31, 79 S. Ct. 406, 410 (1959), the Supreme Court said:

> "The distinctions which the common law draws between licensee and invitee were inherited from a culture deeply rooted to the land, a culture which traced many of its standards to a heritage of feudalism. In an effort to do justice in an industrialized urban society, with its complex economic and individual relationships, modern common-law courts have found it necessary to formulate increasingly subtle verbal refinements, to create subclassifications among traditional common-law categories, and to delineate fine gradations in the standards of care which the landowner owes to each. Yet even within a single jurisdiction, the classifications and subclassifications bred by the common law have produced confusion and conflict. As new distinctions have been spawned, older ones have become obscured. Through this semantic morass *the common law has moved,* unevenly and with hesitation, *towards 'imposing on owners and occupiers a single duty of reasonable care in all the circumstances.'* "
> (Footnotes omitted) (emphasis added).

Thereafter, courts in various states began to abandon the common law distinctions between the duties owed to invitees, licensees, or trespassers. Courts in at least five jurisdictions have abolished the common law distinctions with respect to invitees and licensees, but not with respect to trespassers.[1] Courts in at least six jurisdictions have abolished the common law distinctions with respect to invitees, licensees, and trespassers in cases in which the injured party was either an invitee or a licensee.[2] Courts in at least seven jurisdictions have abolished the common law distinctions in cases in which the injured party was a trespasser.[3]

---

1. *E.g.,* Poulin v. Colby College, 402 A.2d 846, 849-51 (Me. 1979); Mounsey v Ellard, 363 Mass. 693, 706-09, 297 N.E.2d 43, 51-52 (1973); Peterson v. Balach, 294 Minn. 161, 173-74, 199 N.W.2d 639, 642 (1972); O'Leary v. Coenen, 251 N.W.2d 746, 751 (N.D. 1977); Antoniewicz v. Reszcynski, 70 Wis.2d 836, 856-58, 236 N.W.2d 1, 11-12 (1975). *See, e.g.,* Home Ins. Co. v. Spears, 590 S.W.2d 71, 72-73 (Ark. App. 1979).

2. *E.g.,* Smith v. Arbaugh's Restaurant, Inc., 469 F.2d 97, 100 (D.C. Cir. 1972), *cert. denied,* 412 U.S. 939, 93 S. Ct. 2774 (1973); Webb v. City & Borough of Sitka, 561 P.2d 731, 732-33 (Alas. 1977); Rowland v. Christian, 69 Cal. 2d 108, 443 P.2d 561, 568, 70 Cal. Rptr. 97, 104 (1968); Mile High Fence Co. v. Radovich, 175 Colo. 537, 548, 489 P.2d 308, 314 (1971); Gibo v. City & County of Honolulu, 51 Hawaii 299, 301, 459 P.2d 198, 200 (1969); Pickard v. City & County of Honolulu, 51 Hawaii 134, 135-36, 452 P.2d 445, 446 (1969); Basso v. Miller, 40 N.Y.2d 233, 240-41, 352 N.E.2d 868, 872, 386 N.Y.S.2d 564, 568 (1976).

3. *E.g ,* Mark v. Pacific Gas & Electric Co., 7 Cal. 3d 170, 177-78, 496 P.2d 1276, 1278-81, 101 Cal. Rptr. 908, 910-13 (1972) (college student trespasser electrocuted while attempting to remove light bulb from street lamp located outside his bedroom window); Ekberg v. Greene, 196 Colo. 494, 495-97, 588 P.2d 375, 375-76 (1978) (teenage vandals burned by flash fire that occurred when, after the close of business, they opened service station restroom door and struck match to light cigarette); Cates v. Beauregard Elec. Coop., Inc., 328 So. 2d 367, 367-68, 370-71 (La.), *cert. denied,* 429 U.S. 833, 97 S. Ct. 97 (1976) (16-year old trespasser injured after climbing utility pole and touching energized electric wire); Soule v. Massachusetts Elec. Co.,     Mass.     , 390 N.E.2d 716, 719-22 (1979) (child trespasser injured after climbing on switching platform and touching uninsulated high-voltage wire); Pridgen v. Boston Housing Auth., 364 Mass. 696, 709-13, 308 N.E.2d 467, 476-78 (1974) (trapped, imperiled, and helpless child trespasser crushed by descending elevator after climbing through escape hatch in elevator car, slipping off roof, and being caught on metal brackets on shaft wall); Pacquette v. Joyce, 117 N.H. 832, 834, 837, 379 A.2d 207, 208, 210 (1977) (passenger injured when car crossed roadway and collided with stump located on private property); Ouellette v. Blanchard, 116 N.H. 552, 555-58, 364 A.2d 631, 634-35 (1976) (10-year old burned after entering property uninvited with playmates where owner was burning rubbish); Scurti v. City of New York, 40 N.Y.2d 433, 437-43, 354 N.E.2d 794, 795-99, 387 N.Y.S.2d 55, 56-59 (1976) (14-year old trespasser electrocuted, after entering railroad yard through hole in fence and climbing on top of freight car); Mariorenzi v. Joseph DiPonte, Inc.,

The applicable principles, including the standard of care to be employed, were stated in *Ouellette v. Blanchard,* 116 N.H. 552, 557, 364 A.2d 631, 634 (1976) as follows:

> "Accordingly, we hold that henceforth in New Hampshire owners and occupiers of land shall be governed by *the test of reasonable care under all the circumstances* in the maintenance and operation of their property. The character of and circumstances surrounding the intrusion will be relevant and important in determining the standard of care applicable to the landowner. *When the intrusion is not foreseeable or is against the will of the landowner many intruders will be denied recovery as a matter of law.* In other words, a landowner cannot be expected to maintain his premises in a safe condition for a wandering tramp or a person who enters against the known wishes of the landowner. Essentially *the traditional tort test of foreseeability determines the liability or nonliability of the landowner in these cases.* 'If the defendant could not reasonably foresee any injury as the result of his act, or if his conduct was reasonable in the light of what he could anticipate, there is no negligence, and no liability.' W. Prosser, Law of Torts § 43 (4th ed. 1971)." (Emphasis added.)

Under these principles, not every case involving injury on private property raises a factual question for the jury's consideration. The trial court retains its function of making the threshold determination whether there is sufficient evidence to submit the case to the jury. *Scurti v. City of New York,* 40 N.Y.2d 433, 442, 354 N.E.2d 794, 798-99, 387 N.Y.S.2d 55, 59 (1976); *Basso v. Miller,* 40 N.Y.2d 233, 241-42, 352 N.E.2d 868, 872-73, 386 N.Y.S.2d 564, 568

---

114 R.I., 294, 298-307, 333 A.2d 127, 128-33 (1975) (5-year old trespasser drowned in water-filled holes dug for septic tanks). *See, e.g.,* Rosenau v. City of Estherville, 119 N.W.2d 125, 128, 134-36 (Iowa 1972) (child injured by exploding firework that he removed from a baseball park the morning after a fireworks display).

(1976). Thus, as stated in *Paquette v. Joyce,* 117 N.H. 832, 837, 379 A.2d 207, 210 (1977):

> "Ouellette *did not purport to extinguish the court's function to determine whether the foreseeable risk and the relationship of the parties was such as to impose any duty of care at all upon the defendant* for the plaintiff's benefit. We expressly stated that in some cases the plaintiff may be denied recovery as a matter of law." (Emphasis added.)

The fundamental rationale underlying the application of negligence principles rather than traditional common law classifications was stated by Chief Judge Bazelon in *Smith v. Arbaugh's Restaurant, Inc.,* 469 F.2d 97, 101 (D.C. Cir. 1972); *cert. denied,* 412 U.S. 939, 93 S. Ct. 2774 (1973), as follows:

> "We believe that common law classifications are now equally alien to modern tort law, primarily because they establish immunities from liability which no longer comport with accepted values and common experience. Perhaps the protection afforded to landowners by these rules was once perceived as necessary in view of the sparseness of land settlements, and the inability of owners to inspect or maintain distant holdings. The prestige and dominance of the landowning class in the nineteenth century contributed to the common law's emphasis on the economic and social importance of free use and exploitation of land over and above the personal safety of those who qualified as trespassers or licensees.
>
> *Today, the preeminence of land over life is no longer accepted. Human safety may be more important than a landowner's unrestricted freedom.* 'A man's life or limb does not become less worthy of protection by the law nor a loss less worthy of compensation under the law because he has come upon the land of

another without permission or with permission but without a business purpose.' [*Rowland v. Christian,* 69 Cal. 2d 108, 443 P.2d 561, 568, 70 Cal.Rptr. 97, 104 (1968).]" (Emphasis added) (footnotes omitted).

In Maryland, as recently as 1978, Judge Levine, in a dissenting opinion in *Sherman v. Suburban Trust Company,* 282 Md. 238, 252-54, 384 A.2d 76, 84-85 (1978), stated some of the additional reasons for abolishing the common law classifications. There he said:

> "Retention of the archaic doctrine predicating the duty of a landowner solely upon the status of the injured party as a trespasser, licensee or invitee can no longer be justified in terms of either logic or social policy. Although it was once thought that the common law approach was necessary to protect a landowner's right to the free use and enjoyment of his property . . . the emerging and more enlightened view, in my opinion, is that society's interest in the safety of its members outweighs its interest in the occupier's unrestricted use of his premises.
>
> . . .
>
> *Strict application of the common law rules has frequently resulted in the inordinately severe treatment of plaintiff entrants. See, e.g., Osterman v. Peters,* 260 Md. 313, 272 A.2d 21 (1971) (upholding directed verdict in favor of defendant whose negligence in leaving swimming pool unattended led to death of 4-1/2 year old infant trespasser). The inequities of the traditional system are especially apparent in those cases where courts, focusing exclusively on status, rule against the injured party as a matter of law thereby depriving the plaintiff of a jury determination as to the reasonableness of the landowner's conduct in light of prevailing standards within the particular community.

. . .

A growing dissatisfaction with the harsh and clumsy nature of the common law rules *has prompted courts to engraft upon the doctrine a multitude of exceptions and modifications. Ironically, these efforts have* by and large *added to the complexity, confusion and inequity of the system,* giving rise to what one court has termed, a 'semantical quagmire.'

. . .

Finally, continued adherence to the ancient licensee-invitee-trespasser distinction is inconsistent with contemporary thinking about the function of tort law in our society. *Resort to rules of status, as opposed to principles of negligence and fault, conflicts with the goal of distributing risks of personal injury over large segments of the population and prevents efficient allocation of social resources. . . .* As professors Harper and James wrote over twenty years ago: '[T]he traditional rule confers on an occupier of land a special privilege to be careless which is quite out of keeping with the development of accident law generally and is no more justifiable here than it would be in the case of any other useful enterprise or activity.' 2 F. Harper & F. James, *The Law of Torts* § 27.3, at 1440 (1956).

*For these reasons, I think it is time to abandon once and for all the common law status-oriented approach to premises liability and to adopt in its stead a standard grounded on well-settled principles of ordinary negligence.*" (Footnote omitted.)

I wholeheartedly agree with Judge Levine. In my view, it is time to abolish judicially-determined status distinctions as the sole determinant of the standard of care owed by an owner or occupier of land to an injured party. I would apply

the traditional principles of negligence, including the test of foreseeability and the standard of reasonable care under all the circumstances, with respect to trespassers as well as with respect to invitees and licensees. Accordingly, I would apply these principles in the two cases here.

In case No. 59, the record shows that Timothy Paul Murphy (petitioner) was injured when he lifted the top of a container that he believed to be a rubbish container, but that was, in fact, a transformer located on a parking lot adjacent to a bowling alley. While lighting some matches in an attempt to see whether his stolen radio had been hidden inside, the petitioner received a severe electrical shock when his hand came in contact with a portion of the transformer. There was evidence to show that the transformer, as well as the walls surrounding it, were covered with graffiti, facts that support an inference that people frequently trespassed upon the premises. There was further evidence to show that the front doors of the transformer were equipped with locks, a fact that supports an inference that the electric company knew that the transformer was dangerous and that trespassers might be injured. In addition, there was evidence to show that there were no lights in the area in which the transformer was located, that there were no warning notices posted, and that the petitioner was able to raise the top of the transformer only because the tabs and welds that affixed the top were broken, according to experts, approximately four days before the accident. These facts support an inference that the electric company did not use reasonable care under all the circumstances.

Thus, there was sufficient evidence to show that the electric company could have reasonably foreseen that a trespasser might be injured as a result of its conduct in maintaining and operating the transformer and that, under all the circumstances, the electric company failed to use reasonable care in maintaining and operating the transformer. Accordingly, in my view, the case was properly submitted to the jury. Because the trial court's jury instructions applied traditional principles of negligence, including the standard of reasonable care under all the

circumstances, rather than the common law principles applicable to trespassers, I would reverse the trial court's judgment N.O.V. without remand for a new trial.

In case No. 87, the record shows that 3½ year old Christopher Smith drowned in a pond located in an abandoned quarry adjacent to an apartment building in which his parents (petitioners) lived. There was evidence to show that for some 20 years, the pond had been utilized by residents of the neighborhood for recreational purposes, a fact that establishes that people frequently trespassed upon the premises. There was further evidence to show that at one time the owners had posted "no trespassing" signs and had erected a barbed wire fence around the property, and that two children had previously drowned in the pond, facts that support an inference that the landowner knew that the pond was dangerous and that trespassers might be injured. In addition, there was evidence to show that, by the time of Christopher's death, the "no trespassing" signs had disappeared, that the fence had fallen into such disrepair that there was uninhibited access to the pond, and that the failure to maintain the fence was a violation of the Baltimore County Code. These facts support an inference that the landowner did not use reasonable care under all the circumstances. Thus, here, as in Case No. 59, there was sufficient evidence to show that the landowner could have reasonably foreseen that a trespasser might be injured as the result of its conduct in maintaining the premises and that, under all the circumstances, the landowner failed to use reasonable care in maintaining the premises.

In my view, the trial court erred in sustaining the landowner's demurrer. Accordingly, I would reverse the trial court's judgment in favor of the landowner and would remand the case for further proceedings.

I do, however, agree with the majority that the trial court did not err in granting Baltimore County's motion raising a preliminary objection on the ground of immunity. Accordingly, I would affirm the trial court's judgment in favor of Baltimore County. To this extent, I concur.