LEVINE ET AL. *v.* MILLER ET AL.

[No. 17, September Term, 1958.]

*Decided October 27, 1958.*

The cause was argued before BRUNE, C. J., and HENDERSON, HAMMOND, PRESCOTT and HORNEY, JJ.

Submitted on brief by *Stanley B. Frosh, Max Kampelman* and *Eugene Gressman,* for appellants.

*John M. McInerney,* for appellees.

HAMMOND, J., delivered the opinion of the Court.

The infant plaintiff below, Janet Levine, an appellant here, lived with her parents in Spring Knoll Apartments, one of the buildings of a large apartment development in Silver Spring. In the basement of another building of the development, known as Spring Garden Apartments, about a block away, was a recreation room which was kept locked by the owners of the apartment development, the defendants below and appellees here, so that it could not be used except by permission. On request by a tenant, use of the room was granted for special occasions or purposes. Those seeking to use the room would sign their name and be given the key. When the permitted use was over, the key would be returned to the office. Janet, who was then about ten years old, requested permission to use the recreation room as a day camp for some twelve children, aged two to five, whom she supervised for their mothers from time to time. The appellees agreed, provided the parents of the children gave their permission and signed a statement that they would be responsible for any accidents that happened while the children were using

the room.  A statement was prepared by Janet and another girl about the same age, who helped with the younger children, reading:  "May the children of the summer camp use the recreation room?  We will be fully responsible of [sic] any accidents that happen during the time we are using the room.  We will deeply appreciate it."  This was signed by the mothers of the children, including Mrs. Levine, and delivered to the appellees upon the understanding that Janet or her supervising colleague would go to the office, sign for the room, get the key and state the name of the mother who would be present during the time the room was in use.  This procedure was followed each time the room was used.  On July 23, 1956, Janet signed for the room and it was occupied by the children for some two hours for a cookie and juice party.  Janet returned the key to the office but deliberately left one of the two doors to the room unlocked without telling the appellees of that fact.  Some six hours later, without notice to anyone and without permission, Janet returned to the recreation room for the purpose, she says, of cleaning it up.  She was there about an hour and a half.  As she was about to leave, she leaned against a heavy radiator which, as she moved forward, "came with" her, fell on her, and injured her left heel.  Apart from Janet, no witness testified as to the radiator except an office employee of the appellees, who said she understood that the engineer for the apartment development had placed the radiator in the recreation room temporarily while he installed a replacement in an apartment and that it was to be in the recreation room only until it could be taken out for repairs.

Suit was brought against the owners of the apartment development by Janet, through her father as next friend, for pain and suffering past and prospective, and by her father in his own right for medical expenses expended by him for Janet.  At the conclusion of the entire case, the trial court directed a verdict for the defendants on the ground that by signing the paper as to the use of the room, Janet's parents released the apartment owners as to all liability.

The appellants urge that the trial court erred (a) in directing the verdict; (b) in admitting in evidence the so-called

release, because it was not affirmatively pleaded by the defendants as a defense; (c) in not allowing the jury to construe the so-called release, and so, in effect and as a matter of law, construing it as covering accidents to those using the room and not merely accidents caused to the room and its contents by those using it.

We agree that a verdict for the defendants should have been directed, although our reasons for reaching that conclusion are different from those relied on by the trial court.

Several interesting questions would come to mind if the paper signed by the mothers were to be treated as a release. For example, (1) can a parent validly release the right of an infant to recover for damage caused to her by the negligence of another; (2) does the provision of Maryland Rule 342 c 2(g) that "All matters of justification, excuse or discharge where the action is for trespass * * * to the person", must be specially pleaded in an action *ex delicto,* apply to an action for trespass on the case; and (3) assuming the rule to apply to the case at bar, would the fact that the controversial paper first was testified to by the witnesses for the plaintiffs, who were entirely familiar with it and not taken by surprise, make the paper proper evidence to be considered in deciding the case, despite the fact it was not pleaded specially. In the view we take of the case, none of these questions need be answered. Appellees frankly conceded at the argument here that the release would be ineffective to exonerate them from negligence for which they would otherwise be liable. They offered the paper and rely on it primarily to show the character of the use of the recreation room and as a measure of correlative duties of the appellees as landlords and the appellants as tenants in relation to it. We think it was admissible for the primary purpose for which it was offered and is relied on although it had not been specially pleaded.

We turn to the argument of the appellants that the recreation room was maintained by the landlords for the common use of the tenants so that, in using it, Janet was an invitee to whom was owed the duty of ordinary care, or a licensee to whom was owed the duty of a warning of hidden danger,

such as the unattached radiator. Where a landlord leases separate portions of a property to different tenants and reserves under his control halls, stairways and other portions of the property used in common by all of the tenants, he is obliged to use reasonable diligence and ordinary care to keep the portions retained under his control in reasonably safe condition. *Seaman v. State,* 213 Md. 359, 366; *Ross v. Belzer,* 199 Md. 187, 190; *Sezzin v. Stark,* 187 Md. 241, 250. A room always locked, except when special permission is given to use it for a limited time, is, we find, in a different category from public portions of a building retained under the control of the landlord which the tenants use as a matter of express or necessarily implied right. At most, the recreation room was merely a convenience for the tenants and not necessarily for use in connection with the portions of the building leased by them. There is no denial that the room was always locked except when it was opened with the permission of the landlords, and that the period of the use was known to the landlords because the key was given when it began and returned when it ended.

The use by the infant appellant in the case before us expressly was on these usual conditions plus the added condition that a mother accompany the children when the room was in use. If we assume, without deciding, that the landlords owed Janet a duty of ordinary care during the time she was using the room with permission, and that the leaving of the unattached radiator in the room during the time of such use would constitute evidence of negligence, the appellants are not helped. There was no showing whatever that the radiator was in the room during the period the landlords were on notice that it was in use. The evidence not only permits but suggests the finding that the radiator was placed in the room by the engineer of the landlords when the room was not in use or supposed to be in use. None of the children who testified, including Janet, could remember having seen the radiator when the room was in use by permission. We think that when Janet returned to the room some six hours after her right to use the room had expired, without the permission or even the knowledge of the landlords, she

was at most a licensee—if not a trespasser—to whom, under the strict Maryland rule, the landlords owed no duty other than to avoid wilful injury or entrapment. One may be an invitee or business visitor as to one portion of the premises, or for a limited time, and be a licensee or trespasser as to another portion of the same premises or, without changing location, undergo the same change in status by the lapse of time. *Restatement, Torts,* Sec. 343, Comments b and c. Comment c says: "A business visitor ceases to be such after the expiration of a reasonable time in which to accomplish the business purposes of the visit. Whether he becomes a trespasser or bare licensee, depends upon whether the possessor does or does not express consent to his remaining thereafter." In *Hickman v. First National Bank of Great Falls,* 117 P. 2d 275, the Supreme Court of Montana held that one who went into a bank building and its elevator as an invitee, who, after her business purpose ended, made several trips up and down on the elevator with her mother for the purpose of completing a conversation, had ceased to be an invitee, and was a mere licensee at the time she was injured by the fall of the elevator.

Maryland cases are in agreement as to the general principle underlying the rule as to the change of status, geographical or chronological, of one who starts as an invitee. *Gordon v. Waters,* 165 Md. 354, 358; *Pellicot v. Keene,* 181 Md. 135, 139. The Maryland law is firmly established that the owner of land owes no duty to a trespasser or licensee, even one of tender years, except to abstain from wilful or wanton misconduct and entrapment. *Carroll v. Spencer,* 204 Md. 387; *Jones v. City of Aberdeen,* 138 F. Supp. 727, 732 (Dist. Ct. Dist. of Md., Chesnut, J.), aff'd 241 F. 2d 26; *Benson v. Baltimore Traction Co.,* 77 Md. 535. In the *Benson* case the president of the traction company granted the request of a school graduating class to visit the power house of the company. One of the children fell into a vat of boiling water flush with the floor, and alleged that it was uncovered and "situated in a part of the building insufficiently lighted". The Court held that he was not an invitee but a licensee and not entitled to recover. Under the holdings

in the *Carroll* and *Benson* cases and the cases relied on in them, the unattached radiator could not be held to be a trap.

We find in the record no evidence that the appellees violated any legal duty owed the appellants and, therefore, the action of the trial court in directing the verdict for the defendants below was correct.

*Judgment affirmed, with costs.*