*Blackburn Limited Partnership d/b/a Country Place Apartments, et al. v. Alicia Daley Paul*, Case No. 55, September Term, 2013, Opinion by Adkins, J.

**TORT LAW — STATUTORY DUTY — STATUTORY DUTY APPLIES DESPITE COMMON-LAW RULE THAT PROPERTY OWNERS OWE NO AFFIRMATIVE DUTY TO TRESPASSERS:** The Court of Special Appeals correctly held that the Circuit Court for Montgomery County erred by granting Petitioners' Motion for Summary Judgment. A property owner's duty to comply with COMAR provisions governing pool safety extends to a child trespasser, despite the common-law rule that property owners owe no affirmative duty to trespassers.

Circuit Court for Montgomery County
Case No. 346737-V
Argued: February 7, 2014

IN THE COURT OF APPEALS

OF MARYLAND

No. 55

September Term, 2013

---

BLACKBURN LIMITED PARTNERSHIP
d/b/a COUNTRY PLACE APARTMENTS,
et al.

v.

ALICIA DALEY PAUL

---

Barbera, C.J.
Harrell
Battaglia
Greene
Adkins
McDonald
Eldridge, John C., (Retired,
        Specially Assigned),

JJ.

---

Opinion by Adkins, J.

---

Filed: April 28, 2014

This case involves the intersection of two distinct principles in our tort jurisprudence. On one hand, Maryland law recognizes that property owners owe no affirmative duty of care to trespassers. On the other hand, settled Maryland precedent acknowledges that, in some instances, the duty of care in a negligence action may arise from statute or regulation. Our task is to examine this intersection, and clarify the relationship between these two facially divergent principles.

## FACTS AND LEGAL PROCEEDINGS

Around 9 a.m. on June 13, 2010, three-year-old Christopher Paul and his ten-year-old brother, Andre, went to play outside their parents' apartment home at Country Place Apartments ("Country Place") in Burtonsville, Maryland. The two boys returned to the apartment three times before going back outside to continue playing. A few minutes after the boys went outside for the third time, Andre came to the apartment and asked the boys' mother, Alicia Paul ("Respondent"), where Christopher was. Respondent and Andre went outside to look for Christopher, with Respondent looking between cars in the parking lot while Andre looked behind the apartment building. Respondent and Andre then began walking on the sidewalk toward the apartment complex's pool, all the while shouting Christopher's name and continuing to look between the cars in the parking lot.

Eventually Respondent decided to move toward the pool. Upon nearing the pool, Respondent saw Christopher's t-shirt and slippers just inside the pool's gate. Respondent attempted to push the gate open, but could not do so. At that time, the pool's lifeguards arrived, and Respondent asked them to open the gate. After one of the lifeguards unchained

the gate, Respondent ran to the pool and saw that Christopher was submerged in the water. One of the lifeguards jumped into the pool and pulled Christopher out of the water. The lifeguards began CPR while Respondent spoke to a 911 operator. Police officers responded to the scene, relieving one of the lifeguards who was performing chest compressions while the other lifeguard continued to perform rescue breaths. These efforts continued until paramedics arrived and transported Christopher to the pediatric emergency room at Howard County General Hospital.

As a result of this near drowning, Christopher sustained a severe anoxic brain injury. He now has multiple, complex medical conditions. Christopher is dependent on others for mobility and feeding, is largely unresponsive, and has neither volitional movements nor functional vision. These conditions require continuous care. Doctors do not expect Christopher's various medical conditions to improve in the future.

On December 17, 2010, Respondent filed a complaint against Second Blackburn Limited Partnership ("Second Blackburn"),[1] Berkshire Property Advisors, L.L.C. ("Berkshire"),[2] and Community Pool Service, Inc. ("CPS")[3] (collectively, "Petitioners") in

---

[1] Second Blackburn was the owner of Country Place Apartments at the time of the incident.

[2] Berkshire was the manager of Country Place Apartments at the time of the incident.

[3] CPS operated the pool at Country Place Apartments at the time of the incident.

the Circuit Court for Baltimore City.[4]  The complaint alleged negligence and negligence per se, and sought compensatory damages for medical expenses in the amount of $15,000,000, plus costs and interest.  Respondent's negligence action alleged that Petitioners breached "a duty to maintain the Country Place pool in a reasonably safe condition for all residents of Country Place Apartments, and particularly children of all ages, including Christopher." Respondent's negligence per se action alleged that Petitioners breached statutory and regulatory duties by failing to comply with pool regulations set forth in the Code of Maryland Regulations ("COMAR") 10.17.01.01 *et seq.*,[5] Montgomery County Code § 51-1 *et seq.*, and Code of Montgomery County Regulations ("COMCOR") 51.00.01 *et seq.*

Blackburn and Berkshire filed a motion for summary judgment with respect to all of Respondent's claims, arguing that because Christopher was a trespasser, they only owed a duty to refrain from willfully or wantonly injuring Christopher.  Blackburn and Berkshire further stated that the alleged violations of state and county codes could not create a duty to Christopher because he was a trespasser, and argued that Christopher's unsupervised play was the intervening, superseding cause of his injuries.  CPS also filed a motion for summary judgment, arguing that as Blackburn's agent, it could not have owed Christopher a duty

_____

[4]On November 8, 2011, the parties filed a Stipulation of Substitution of Party, stating that Blackburn Limited Partnership ("Blackburn") was actually the owner of Country Place Apartments, and should be substituted for Second Blackburn.

[5]The COMAR provisions we cite were those in effect at the time of the injury in this case, June 13, 2010.  Amendments to COMAR 10.17.01.01 *et seq.* that took effect as emergency provisions on January 3, 2014 are not relevant to the resolution of this case.

3

greater than the duty that Blackburn owed to him.

After a hearing, the Circuit Court issued an order granting Petitioners' motions for summary judgment. The Circuit Court held that Christopher's status changed from invitee to trespasser when he entered the pool area, and as a result, the only common-law duty owed "was to avoid willful and wanton misconduct or entrapment." The Circuit Court found no evidence to support a breach of that duty. Concerning the alleged statutory duty, the court first held that "a potential violation of a statutory regulation is relevant only if the Court found that the Defendants owed [a] duty beyond that of a trespasser." The court also held that the alleged statutory violations did not set forth a *prima facie* case of negligence because the regulations at issue only became effective on February 10, 1997 and did not require the Country Place pool, built in 1978, to comply with the new requirements. Finally, the court stated that a *prima facie* case of negligence required finding that the violation of a regulation was a proximate cause of the injury, but "[w]ithout a scintilla of evidence demonstrating exactly how Christopher circumvented the fence, the Court cannot consider a possible violation as *prima facie* evidence of negligence."

Respondent appealed to the Court of Special Appeals. The intermediate appellate court reversed the Circuit Court, holding that Petitioners were required to comply with the 1997 COMAR regulations and the 1997 Montgomery County statutory provisions concerning pool barriers. *See Paul v. Blackburn Ltd. P'ship*, 211 Md. App. 52, 105–06, 63 A.3d 1107, 1139 (2013). The court adopted those regulations as the standard of care, concluding that

4

"the statutes and regulations were designed to create a cause of action in tort for the protection of the swimming public." *Paul*, 211 Md. App. at 106–08, 63 A.3d at 1139–40. The court firmly rejected the notion that a defendant must owe a common-law duty to a plaintiff before violation of a statute can be used as evidence of negligence. *Paul*, 211 Md. App. at 109, 63 A.3d at 1141. Finally, the intermediate appellate court held that the trial court erred in "finding there was not a 'scintilla of evidence demonstrating exactly how Christopher circumvented the fence,' and in granting summary judgment on the issue of causation." *Paul*, 211 Md. App. at 112, 63 A.3d at 1142.

Petitioners appealed to this Court, and we granted *certiorari* to answer the following questions:

> 1. Has the opinion of the Court of Special Appeals abrogated more than eighty years of law holding that property owners owe no duty to trespassers onto their property?
>
> 2. Did the Court of Special Appeals improperly conclude that evidence of violation of regulations created a duty from a property owner to a trespasser?
>
> 3. Has the Court of Special Appeals improperly applied COMAR regulations enacted more than twenty years after a swimming pool was constructed, contrary to the legislative history and the specific language of the regulations?

For the reasons described below, we affirm the judgment of the Court of Special Appeals.

## DISCUSSION

"A trial court may grant summary judgment if there is no genuine dispute as to any

5

material fact and the moving party is entitled to judgment as a matter of law." *Ross v. Housing Auth. of Baltimore City*, 430 Md. 648, 666–67, 63 A.3d 1, 12 (2013) (citing Md. Rule 2-501(f)). When reviewing a grant of summary judgment, we determine "whether the parties properly generated a dispute of material fact and, if not, whether the moving party is entitled to judgment as a matter of law." *Myers v. Kayhoe*, 391 Md. 188, 203, 892 A.2d 520, 529 (2006) (citation omitted). This Court considers "the record in the light most favorable to the nonmoving party and construe[s] any reasonable inferences that may be drawn from the facts against the moving party." *Id.* (citations omitted). A plaintiff's claim must be supported by more than a "scintilla of evidence[,]" as "there must be evidence upon which [a] jury could reasonably find for the plaintiff." *Beatty v. Trailmaster Products, Inc.*, 330 Md. 726, 738–39, 625 A.2d 1005, 1011 (1993) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252, 106 S. Ct. 2505, 2512 (1986)).

If the trial court decision turns on a question of law, not a dispute of fact, we review the trial court's decision for legal correctness without deference. *See Mathews v. Cassidy Turley Maryland, Inc.*, 435 Md. 584, 598, 80 A.3d 269, 277 (2013).

Petitioners present three arguments that the Court of Special Appeals erred in reversing the Circuit Court. The first argument is based on Maryland law that has consistently and unambiguously held that property owners do not owe an affirmative duty to trespassers. This argument unfolds as follows: (1) in premises liability cases, legal duties are contingent on a person's "status" on the premises; (2) there was no dispute of material

6

fact that Christopher was a trespasser at the pool; and (3) given Christopher's status as a trespasser, Petitioners had no duty to protect Christopher from injury caused by his trespass into the pool.

Petitioners' second argument is that the regulations regarding fencing and barriers did not alter the limited common-law duty that Petitioners owed to Christopher as a trespasser. Asserting broadly that regulatory violations cannot create a duty where none exists under common law, Petitioners specifically contend that under Maryland law, regulations regarding fencing around pools or bodies of water will not create a duty from a property owner to a trespasser. Petitioners allege that in order to create a legal duty, a statute must expressly state that it is doing so—something the regulations at issue here fail to do. Indeed, Petitioners state that only one case, *Allen v. Dackman*, 413 Md. 132, 991 A.2d 1216 (2010), has held that a statute expressly created a duty from a landowner to a trespasser. Thus, Petitioners contend that the long-standing common-law rule limiting a property owner's duty to a trespasser has only been abrogated in the narrow context of lead paint.

Finally, Petitioners argue that even if the relevant COMAR regulations were construed to create a legal duty to trespassers, the plain language, legislative history, and implementation of those regulations by the Montgomery County Health Department evince that pre-existing pools, like that at Country Place, were not required to retrofit or change barriers to comply with the barrier provisions enshrined in COMAR 10.17.01.21.

Respondent urges us to affirm the judgment of the Court of Special Appeals. She

7

contends that our inquiry cannot end with an examination of Petitioners' duty to Christopher under the common-law duty of property owners to trespassers. Rather, she asks us to focus on the statutory duty that Petitioners owed to Christopher. Respondent advances that under Maryland law, the applicable test for her negligence claim is whether Petitioners violated a statute, ordinance, or regulation that was designed to protect a specific class of persons, which includes Christopher, and whether that statutory violation proximately caused Christopher's injuries.

According to Respondent, duties arising from statutory violations have been recognized in Maryland for almost a century, and are not confined to cases involving lead paint. Respondent further alleges that a review of the language, legislative history, and purposes of the relevant COMAR and County regulations compels the conclusion that Christopher is within the class of persons that these pool safety regulations were designed to protect. Respondent rejects Petitioners' claim that they are exempt from Maryland's pool safety barrier regulation, thus rejecting their invocation of COMAR's grandfathering provisions. Respondent claims that the inapplicability of the grandfathering provisions is further bolstered by the compliance schedule set forth in COMAR 10.17.01.54, as well as COMAR 10.17.01.03D, which precludes grandfathering that "jeopardizes the health or safety of the public."

Respondent concludes by arguing that Petitioners' construction of the regulations would have dangerous implications for Maryland public pools, and that Petitioners waived

8

any argument that the Montgomery County Codes and The Building Officials & Code Administrators Basic Building Code of 1970 ("BOCA") do not create a duty to Christopher. Respondent alleges that Petitioners have no viable argument that their violation of the statute—a breach of their statutorily-derived duty of care to Christopher—was not the proximate cause of Christopher's injuries. Finally, Respondent characterizes the cases cited by Petitioners as inapplicable and outdated.

*Duty To Trespassers And Statutory Duty*

We now turn to the first question. Petitioners argue that any putative duty of care derived from statute cannot trump the limited, common-law duty that property owners owe to trespassers. The starting point of this argument is unobjectionable, for in a variety of cases, we have indeed affirmed a property owner's right to exclude others from, and to control the use of, their property. *See Weems v. Cnty. Comm'rs of Calvert Cnty.*, 397 Md. 606, 619, 919 A.2d 77, 85 (2007) ("The Supreme Court has remained consistent in asserting that included amongst a property owner's 'bundle of rights' is the right to exclude others."); *Landay v. Cohn*, 220 Md. 24, 28, 150 A.2d 739, 741 (1959) ("[A landlord's] responsibility for the reasonably safe condition of premises retained under his control is limited to the confines of his invitation to use them, express or implied. It does not extend to the use of such premises for an unintended purpose."); *Levine v. Miller*, 218 Md. 74, 79, 145 A.2d 418, 421 (1958) ("One may be an invitee or business visitor as to one portion of the premises, or for a limited time, and be a licensee or trespasser as to another portion of the same premises

9

or, without changing location, undergo the same change in status by the lapse of time."). These precepts form the basis of our common-law rule concerning the limited duty of property owners to trespassers. *See Levine*, 218 Md. at 79, 145 A.2d at 421 ("The Maryland law is firmly established that the owner of land owes no duty to a trespasser or licensee, even one of tender years, except to abstain from wilful [sic] or wanton misconduct and entrapment.").

But another strand of law is relevant here. Our examination of this strand begins with *Brooks v. Lewin Realty III, Inc.*, 378 Md. 70, 79, 835 A.2d 616, 621 (2003). *Brooks* concerned a tenant's tort action against a landlord based upon a child's consumption of lead-based paint in leased premises that were in violation of the Baltimore City Housing Code. 378 Md. at 72, 835 A.2d at 617. There, we recognized that a different common-law rule—that landlords have no duty to repair or inspect premises before or during a lease term—was trumped by Maryland's rule concerning applicable statutory schemes:

> [U]nder the common law and in the absence of a statute, a landlord ordinarily has no duty to keep rental premises in repair, or to inspect the rental premises either at the inception of the lease or during the lease term. There are, however, exceptions to this general rule.
>
> Moreover, where there is an applicable statutory scheme designed to protect a class of persons which includes the plaintiff, another well-settled Maryland common law rule has long been applied by this Court in negligence actions. That rule states that the defendant's duty ordinarily "is prescribed by the statute" or ordinance and that violation of the statute or ordinance is itself evidence of negligence.

10

*Brooks*, 378 Md. at 78, 835 A.2d at 620–21 (quoting *Brown v. Dermer*, 357 Md. 344, 358–59, 744 A.2d 47, 55 (2000)).

The *Brooks* Court observed that this rule was first announced in *Flaccomio v. Eysink*, 129 Md. 367, 380, 100 A. 510, 515 (1916), nearly one hundred years before the dispute here. 378 Md. at 78, 835 A.2d at 621. To give flesh to this long-standing rule ("the Statute or Ordinance Rule"),[6] the *Brooks* Court went on to describe both its requirements and effect:

> Under this principle, in order to make out a *prima facie* case in a negligence action, all that a plaintiff must show is: (a) the violation of a statute or ordinance designed to protect a specific class of persons which includes the plaintiff, and (b) that the violation proximately caused the injury complained of. "Proximate cause is established by determining whether the plaintiff is within the class of persons sought to be protected, and the harm suffered is of a kind which the drafters intended the statute to prevent. * * * It is the existence of this cause and effect relationship that makes the violation of a statute *prima facie* evidence of negligence."

*Brooks*, 378 Md. at 79, 835 A.2d at 621 (quoting *Brown*, 357 Md. at 359, 744 A.2d at 55).

A subsequent case in the *Brooks* line, *Allen*, 413 Md. 132, 991 A.2d 1216 (2010), clarified the reach of the Statute or Ordinance Rule.[7] In *Allen*, this Court considered an

---

[6]In *Polakoff v. Turner*, we referred to this rule as "the 'statute or ordinance' rule." 385 Md. 467, 476, 869 A.2d 837, 843 (2005) (citing *Brooks v. Lewin Realty III*, 378 Md. 70, 78–79, 835 A.2d 616, 621 (2003)). For purposes of clarity and to conform to this precedent, we will refer to the two-part *Brooks* test ("the Statute or Ordinance Rule") in the same manner.

[7]In *Allen v. Dackman*, this Court discussed the North Carolina Supreme Court's decision in *Bell v. Page*, 271 N.C. 396, 156 S.E.2d 711 (1967). 413 Md. 132, 158 n.18, 991 A.2d 1216, 1231 n.18 (2010). In *Bell*, a child drowned in a motel swimming pool that was

(continued...)

11

argument that lead paint statutes in the Baltimore City Housing Code "imposed no duty on owners of property in regard to individuals who have no legal right to possess the property." 413 Md. at 156, 991 A.2d at 1230. The property owners in that case argued that because a court had determined that plaintiffs "were wrongfully in possession of the property [. . .]" in question, no duty applied. *Id*. This Court rejected that argument, first observing that common-law limitations on the duty owed to trespassers were "inapplicable" in a case **"based on the Housing Code, not the common law."** *Allen*, 413 Md. at 157, 991 A.2d at 1231 (emphasis added). After examining the purposes and language of the Housing Code, this Court determined that the *Allen* plaintiffs were within the class to be protected by the statute. *Allen*, 413 Md. at 157–58, 991 A.2d at 1231. Thus, the tort action in that case survived summary judgment, despite the plaintiffs' status as trespassers under the common law. *See Allen*, 413 Md. at 160, A.2d at 1233.

Petitioners nevertheless persist that "regulations regarding fencing around pools or bodies of water will not create a duty from the premises owner to a trespasser." They primarily rely on *Osterman v. Peters*, 260 Md. 313, 272 A.2d 21 (1971), in which this Court considered the case of a four-and-a-half-year-old boy who drowned while trying to retrieve

---

[7](...continued)
not surrounded by a fence, as required by a local municipal ordinance. 271 N.C. at 397–98, 156 S.E.2d at 714–15. Although the court considered the child a trespasser, it nevertheless held that the defendant owed a duty under the ordinance because the law was intended "to provide protection for children **without reference to whether they were legally entitled to use the pool."** *Bell*, 271 N.C. at 399, 156 S.E.2d at 715 (emphasis added).

a ball from a pool at his neighbor's vacant house. Basing its holding on this Court's decision in *State v. Longeley*, 161 Md. 563, 158 A. 6 (1932), the *Osterman* Court held that because the boy was a trespasser, the boy's father could not bring a negligence action based on the defendant's violation of a fencing ordinance. *Osterman*, 260 Md. at 317, 272 A.2d at 23.

In *State v. Longeley*, this Court declined to hold quarry owners liable for the drowning of a trespassing twelve-year-old. 161 Md. at 570, 158 A. at 8. The Court examined the defendant's violation of an ordinance requiring that abandoned quarries be enclosed by a fence with certain characteristics. *Longeley*, 161 Md. at 566, 158 A. at 7. In holding that the quarry owners owed no statutory duty to the child, the *Longeley* Court set forth a two-part test: "(1) [t]hat the violation of the ordinance was the proximate cause of the injury. (2) That the person injured, at the time of the injury, had the right to be on the property of defendant and was not a trespasser." *Longeley*, 161 Md. at 569, 158 A. at 8. The Court declared that:

> **The ordinance in this case was passed for the benefit of the public**. Any violation of it subjects the owner of a quarry to a fine. But, before an individual can hold [a property owner] liable for an injury alleged to have resulted from [a statutory violation], there must be shown a right on the part of the plaintiff, a duty on the part of the defendant with respect to that right, and a breach of that duty by the defendant whereby the plaintiff has suffered injury. A trespasser can acquire no such right except in case of willful injury. The mere violation of a statute would not give it. The effect of such violation is only to raise a presumption of negligence in favor of one entitled to assert it.

*Longeley*, 161 Md. at 569–70, 158 A. at 8 (citations omitted; emphasis added); *see also Murphy v. Baltimore Gas and Elec. Co.*, 290 Md. 186, 194–95, 428 A.2d 459, 464 (1981)

13

(applying *Longeley* and *Osterman* in a similar abandoned quarry case), *overruled on other grounds by Baltimore Gas and Elec. Co. v Flippo*, 348 Md. 680, 705 A.2d 1144 (1998).

As our discussion of *Longeley*, *Osterman*, and *Murphy* highlights, none of these cases involved a statute or ordinance designed to protect a specific class of persons.[8] Whereas those cases dealt with ordinances "passed for the benefit of the public," the statute at issue here, as we shall explain, aims to protect a more targeted class of persons. That is why those courts did not engage in a careful application of the Statute or Ordinance Rule, and why we must do so here. It is also why those courts relied on the plaintiff's status as trespasser to deny relief. As we stated in *Allen*, the Statute or Ordinance Rule places no significance on the legal status of plaintiffs on the premises. What matters is that they are members of the class to be protected by the statute.

Petitioners attempt to characterize *Allen* as "a rare instance of the court finding that a statute created a specific duty from one group of persons to another." They argue that "this Court held in *Allen* that the long-standing law that a premises owner owes no duty to a trespasser had been abrogated solely in the narrow confines of the Baltimore City Housing Code lead paint statutes, which expressly created a duty to abate lead paint between premises owners and all occupants, whatever their status." We find no reason in law or logic to so

---

[8]In explicating its reasoning in *Osterman v. Peters*, 260 Md. 313, 316, 272 A.2d 21, 23 (1971), this Court relied on *State v. Longeley*, 161 Md. 563, 158 A. 6 (1932), which denied a plaintiff relief because "'[t]he ordinance in this case was passed for the benefit of the public.'" Thus, the issue of a statutorily protected class was not addressed in the *Osterman* Court's analysis.

14

cabin our holding in *Allen*. There, the common-law rule that a landowner owes a limited duty to trespassers was trumped by the Statute or Ordinance Rule. *See supra*. Here, the same rationale applies.[9]

Moreover, the Statute or Ordinance Rule has never been confined to the context of lead paint cases. This Court has identified the Statute or Ordinance Rule as the right rule to apply in a variety of settings. *See Wietzke v. Chesapeake Conference Ass'n*, 421 Md. 355, 395, 26 A.3d 931, 955 (2011) (holding that a jury could apply the Statute or Ordinance Rule to regulations concerning sediment control regulations); *Gourdine v. Crews*, 405 Md. 722, 758, 955 A.2d 769, 791 (2008) (holding that protections contained in product branding statutes targeted too broad a class to satisfy the Statute or Ordinance Rule); *Remsburg v. Montgomery*, 376 Md. 568, 587, 831 A.2d 18, 29 (2003) (holding that the Statute or Ordinance Rule was not satisfied by hunting regulations that were not intended to prevent the injury at issue); *Moore v. Myers*, 161 Md. App. 349, 365–66, 868 A.2d 954, 964 (2005) (holding that the Statute or Ordinance Rule was satisfied by the violation of an animal control statute). This variety indicates that the Statute or Ordinance Rule has broad applicability,[10] and need not be cabined by common-law rules that are unique to the premises liability

[9]Petitioners have pointed to no authority indicating that when a protected class is specified, a class member's legal status on property affects the straightforward application of the Statute or Ordinance Rule.

[10]In this regard, we observe that "[t]he law in this State regarding the breach of a statutory duty remains the same today as it has for over ninety years." *Polakoff*, 385 Md. at 483, 869 A.2d at 847 (2005).

15

context.

Importantly, part (a) of the Statute or Ordinance Rule already sets a meaningful limitation on a court's ability to apply it. *See, e.g., Wietzke*, 421 Md. at 388, 26 A.3d at 951 ("[W]e have always required the statute or ordinance allegedly violated to 'set forth mandatory acts' that are 'clearly for the protection of a *particular* class of persons' and *not* merely for 'the public as a whole.'" (quoting *Remsburg*, 376 Md. at 584, 831 A.2d at 27 (2003) (italics in original)));[11] *see also Muthukumarana v. Montgomery Cnty.*, 370 Md. 447, 499–500, 805 A.2d 372, 403 (2002) (holding that a statute designed to protect "the safety and well-being of the citizens of Maryland" referenced too broad a protected class to satisfy the Statute or Ordinance Rule (quoting Md. Code (1957, 1997 Repl. Vol.), Art. 41, § 18–101(a))).

Despite the relative clarity of the Statute or Ordinance Rule, Petitioners also argue that the creation of a legal duty must be expressly stated in a statute for the Statute or Ordinance Rule to apply. Petitioners rely on our recent decision in *Warr v. JMGM Group, LLC*, 433 Md. 170, 70 A.3d 347 (2013). In *Warr*, this Court rejected several arguments to impose dram shop liability, including an assertion "that the tavern owners owed a duty to refuse to serve an intoxicated patron[] because there is a criminal statute prohibiting the sale of alcohol

---

[11]We agree with the intermediate appellate court's observation that the use of the Statute or Ordinance Rule must be "carefully circumscribed." *Joseph v. Bozzuto Management Co.*, 173 Md. App. 305, 322, 918 A.2d 1230, 1239 (2007). Part (a) of the Statute or Ordinance Rule provides this needed check.

16

to visibly intoxicated persons." *Warr*, 433 Md. at 195, 70 A.3d at 362. This Court observed that it "ha[d] not extrapolated civil liability from criminal statutes regulating the sale of alcohol, unlike some of our sister states." *Warr*, 433 Md. at 197, 70 A.3d at 363. The Court then stated the Statute or Ordinance Rule—that in order to premise civil liability on a violation of a statute, a party need show "'(a) the violation of a statute or ordinance designed to protect a specific class of persons which includes the plaintiff, and (b) that the violation proximately caused the injury complained of.'" *Warr*, 433 Md. at 198, 70 A.3d at 364 (quoting *Brooks*, 378 Md. at 79, 835 A.2d at 621). This Court rejected the application of the Statute or Ordinance Rule, finding that the statute in question was enacted "'for the protection, health, welfare and safety of the people of this State[,]'" not a particular class. *Warr*, 433 Md. at 198, 70 A.3d at 364 (quoting Md. Code (1957, 2011 Repl. Vol.), Article 2B, Section 1-101(a)(3)). Thus, *Warr* only reinforced part (a) of the Statute or Ordinance Rule, and did not set forth any requirement that statutes must expressly state the creation of a legal duty in order to represent the standard of care in a negligence action. In *Warr*, the applicable statute failed to define a particular class to be protected. That infirmity is not present here.

### *Existence Of A Statutory Duty*

Although we hold that the Statute or Ordinance Rule can apply irrespective of a property owner's duty to trespassers under the common law, we must still determine whether a statutory duty arose in this case. The intermediate appellate court concluded that:

17

> [T]he 1997 COMAR regulations governing public swimming
> pools, and specifically COMAR 10.17.01.21 governing pool
> barriers, as well as the 1997 Montgomery County statutory and
> regulatory provisions, were applicable to the Country Place pool
> at the time of the incident in this case—*i.e.* [Petitioners] were
> required, by statute and regulation, to comply with the
> regulations and code provisions relevant to public swimming
> pools, in general, and pool barriers, in particular. That the
> circuit court found otherwise was error.

*Paul*, 211 Md. App. at 105–06, 63 A.3d at 1139. Petitioners argue that the trial court was correct in holding that no statutory duty arose from the COMAR regulations because Petitioners were not required to comply with them. We now turn to that question, warning the reader that a good amount of patience will be required.

COMAR 10.17.01.01 *et seq.* became effective on February 10, 1997. The stated purpose of the chapter "is to enact regulations that protect and promote the public health and safety of individuals at public spas and pools in Maryland. Public pools include . . . recreational pools[.]" COMAR 10.17.01.01. Under COMAR 10.17.01.05B(19)(f)(v), Petitioners' pool meets the definition of a recreational pool. ("[A recreational pool includes those at] [a]n apartment complex, housing subdivision, or mobile home park with more than ten units[.]").[12] COMAR 10.17.01.13, entitled "Standards for Recreational and Semipublic Pools[,]" provides that "[a]n owner shall ensure that an existing, newly built, or altered recreational or semipublic pool is in compliance with: A. This chapter; B. Applicable State and local codes; and C. The American National Standard for Public Swimming Pools."

---

[12]Country Place Apartments consists of over 300 units.

COMAR 10.17.01.05B(3) defines a "barrier" as "a fence or wall or a combination of a fence and wall that completely surrounds and obstructs access to the pool or spa." COMAR 10.17.01.21, entitled "Barriers[,]" mandates the following requirements for a recreational pool:

> A. Except as set forth in §§ B, C, and D[13] of this regulation, an owner shall ensure that a recreational pool . . . including the required deck area, is completely surrounded by a barrier that complies with the following requirements[.]
>
> * * *
>
> **(3) Except when the entrance gate is open, an opening in the barrier and in the gate does not allow passage of a sphere 4 inches in diameter[.]**

COMAR 10.17.01.21A (emphasis added).

Under the plain language of COMAR 10.17.01.21A(3), a barrier's entrance gate cannot allow the passage of a sphere 4 inches in diameter. This requirement aligns with standards set forth in the U.S. Consumer Product Safety Commission's *SAFETY BARRIER GUIDELINES FOR HOME POOLS*, which state that "[a] successful pool barrier prevents a child from getting OVER, UNDER, or THROUGH and keeps the child from gaining access to the pool except when supervising adults are present." These same guidelines explain that

---

[13]Section B concerns barriers for semipublic pools or spas. COMAR10.17.01.21B. Section C states that "an owner may surround a pool and spa, multiple pools, or multiple spas at one facility with one barrier instead of separate barriers for each pool or spa." COMAR 10.17.01.21C. Section D concerns barrier standards for wading or infant pools. COMAR 10.17.01.21D.

19

the 4-inch sphere requirement is "based on the head breadth and chest depth of a young child and is intended to prevent a young child from passing through an opening."

But Petitioners vigorously dispute that the barrier requirements in COMAR 10.17.01.21 mandated modification of their pool fence, built in 1978. We do not quarrel with Petitioners' observation that under the COMAR regulations "existing pools would be exempt from **parts** of the new regulations." (Emphasis added). The question is whether the barrier provisions are among those parts.

The exemptions provided by COMAR 10.17.01.03 for pools constructed before February 10, 1997 are as follows:

> A. Except as provided in §§ D and E of this regulation, the owner of a pool or spa that was approved by the Secretary for construction before the adoption of this chapter is exempt from bringing the previously approved pool or spa into compliance with:
>
>> (1) Regulations .13C, .14A(3), .17C, .18A(3), .22, .24, and .35 of this chapter;[14] and
>>
>> (2) Notwithstanding an exemption set forth at §A(1) of this regulation, the diving area dimensions of Regulation .27B of this chapter[.]
>
> * * *

---

[14]These enumerated exemptions cover the following requirements: .13C ("An owner shall ensure that an existing, newly built, or altered recreational or semipublic pool is in compliance with . . . The American National Standard for Public Swimming Pools."); .14A(3) (standards for public spas); .17C (standards for public wading pools); .18A(3) (standards for public therapy pools); .22 (standards for decks); .24 (standards for pipe material); and .35 (standards for toilet, hand sink, and shower facilities).

20

B.  The owner of a pool . . . that was approved by the Secretary for construction before the adoption of this chapter shall maintain the pool . . . including appurtenant structures and equipment as originally approved and may complete a repair that restores the pool . . . to its original condition before damage or deterioration without complying with the requirements of this chapter, except for Regulations .06C and .28 of this chapter, when the repair:

>    (1) Costs less than 25 percent of the replacement value of the pool . . . ;

>    (2) Consists of the same or equivalent materials and components . . . ; and

>    (3) Does not create a danger or allow a danger to continue that threatens the health and safety of an individual using the pool[.]

* * *

D. The exemptions in §§A and B of this regulation do not apply if:

>    (1) The previously approved pool or spa has a condition that jeopardizes the health or safety of the public, in which case the owner shall ensure that the condition is corrected to meet the requirements of this chapter[.]

Petitioners argue that the "exemptions for 'appurtenant structures and equipment' necessarily include [Petitioners'] fencing by the terms and definitions of the regulations, enshrined in COMAR 10.17.01.03 Previously Approved Pools and Spas."  Observing that COMAR defines a pool as "an artificial enclosure of water that is used for the immersion of the human body for recreation, therapy, or exercise, including a structure that is installed in

the ground, above ground, outside, or in a building or portable structure[,]" Petitioners contend that the "pool" is merely the container of water. COMAR 10.17.01.05B(15). In contrast, "Barrier" is defined as "a fence or wall or a combination of a fence and wall that completely surrounds and obstructs access to the pool or spa." COMAR 10.17.01.05B(3).

Petitioners point to this distinction as evidence that a barrier is an appurtenant structure or equipment for purposes of finding exemptions under COMAR 10.17.01.03 B, C, and D. Consequently, Petitioners contend that COMAR 10.17.01.03B applies to its pool barrier, mandating only that the owner of a pre-existing pool "shall maintain the pool or spa including appurtenant structures and equipment as originally approved[.]" Petitioners attempt to bolster their argument by observing that under COMAR 10.17.01.03C and 10.17.01.03D(2), certain repairs and alterations need not comply with the new COMAR requirements.

In examining Petitioners' argument, we first observe that the standards concerning pool barriers in COMAR 10.17.01.21 are not among the listed exemptions in COMAR 10.17.01.03A. Therefore, we focus on whether the grandfathering provisions laid out in COMAR 10.17.01.03B apply to Petitioners.

Under the plain language of COMAR 10.17.01.03B, Petitioners would be able to maintain or even repair their barrier without complying with the requirements of COMAR 10.17.01.21, so long as the maintenance and repair actions followed the guidelines set forth in COMAR 10.17.01.03B(1)–(3). *See supra*. If these provisions governed, a court would

22

not be able to hold that Petitioners' barrier violated COMAR 10.17.01.21.

But we do not look at this subsection in isolation, and a different subsection carves out an exception to the exemption. COMAR 10.17.01.03D(1) states that the exemptions listed in COMAR 10.17.01.03B do not apply when "[t]he previously approved pool or spa has a **condition that jeopardizes the health or safety** of the public, in which case the owner shall ensure that the condition is corrected to meet the requirements of this chapter[.]" (Emphasis added). Petitioners argue that this exception does not apply to their fence because the language focuses solely on the pool, and does not mention the appurtenant structures or equipment.

We reject this argument based on the plain language of COMAR 10.17.01.03D(1). The fundamental danger of a pool is posed by its water. And it hardly needs saying that, without a fence that bars entry by a three-year-old child, the pool, located in the midst of 300 residential apartments, poses a risk which "jeopardizes the health or safety of" such a child,[15] who might accidentally access the pool unsupervised. The quality and compliance of the fence is simply crucial to safety. The COMAR subsection also states that when such a condition is present, "the owner shall ensure that the condition is corrected **to meet the requirements of this chapter**[.]" (Emphasis added). Thus, the provision does not in any

_____

[15] Although we hold that COMAR 10.17.01.03D(1) prevents Petitioners from invoking the grandfathering provisions of COMAR 10.17.01.03, we underscore that COMAR 10.17.01.03D(1) does not identify the specific class to be protected under the Statute or Ordinance Rule. We turn our attention to that issue *infra*.

23

way limit the "requirements of this chapter" to mean solely the requirements that deal with the pool structure itself.

In addition to the plain language of COMAR 10.17.01.03D(1), we draw support from the purposes and context of the chapter as a whole. As we stated in *Comptroller of the Treasury v. John C. Louis Co., Inc.*, "[s]tatutes are to be construed reasonably and with reference to the purpose to be accomplished." 285 Md. 527, 538, 404 A.2d 1045, 1052 (1979) (citing *Curtis v. State*, 284 Md. 132, 142, 395 A.2d 464, 470 (1978)). Whenever possible, the various parts of a statute should "be reconciled and harmonized to be consistent with the statute's object and scope." *John C. Louis Co.*, 285 Md. at 538–39, 404 A.2d at 1053 (citations omitted). Our interpretation should avoid illogical, absurd, or anomalous results. *John C. Louis Co.*, 285 Md. at 539, 404 A.2d at 1053 (citations omitted).

COMAR 10.17.01.04D incorporates by reference the "American National Standard for Residential Inground Swimming Pools (ANSI/NSPI-5 1995) including Appendix E, Model Barrier Code for Residential Swimming Pools, Spas, and Hot Tubs[.]" ("Model Barrier Code"). We find it significant that Appendix E begins with a "Preamble to NSPI Model **Child Protection/**Barrier Code." (Emphasis added). The Preamble states:

> **Protecting young children from accidental drownings and near-drownings in all aquatic environments**, whether natural or constructed, is a primary concern of parents, the aquatic industry, health and safety organizations and regulatory groups.
>
> * * *
>
> While supervision is the key to accomplishing the objective of

reducing the number of submersion incidents, it is well-known that, at times, children may do the unexpected, catching their supervisors off guard. But being caught off guard does not have to mean being unprepared. For those instances when the unexpected does occur and there may be a lapse in supervision, the National Spa and Pool Institute (NSPI) has developed the Model Child Protection/Barrier Code. This Model Code establishes layers of protection to supplement and complement the requirement for constant adult supervision of young children around aquatic environments.

Model Barrier Code at 37 (emphasis added).

The Model Barrier Code further states, in its "Scope" and "Purpose" sections:

**SCOPE**

These requirements establish layers of protection for young children against the potential for drowning and near drowning in residential swimming pools, spas and hot tubs by limiting or delaying their access to swimming pools, spas, and hot tubs.

**PURPOSE**

The objective of these requirements is to establish provisions that address supervision, the foremost deterrent to a young child's access to a pool, spa or hot tub and to potential accidental drowning, both at times when a pool, spa or hot tub is in use, and at times when it is not in use.

**Additionally, in the event of a lapse in adult supervision, and particularly for the protection of children in the most at-risk age group, less than five (5) years of age, who cannot yet appreciate or be instructed as to the risk of drowning, supplemental layers of protection are established.** They limit or delay child access to an outdoor or an indoor pool, spa or hot tub from the surrounding area and to an outdoor or an indoor pool, spa or hot tub from within a building or dwelling where walls of the building or dwelling are the barrier, or part of the barrier, to the pool, spa or hot tub.

25

Model Barrier Code at 37 (emphasis added).

With these purposes and objectives in mind, COMAR 10.17.01.03D(1) must be read to provide an exception to the grandfathering provisions for both a pool **and** its barrier. Were we to hold otherwise, the targeted safety objectives of the Model Barrier Code, incorporated by reference in COMAR 10.17.01.04, would be completely ignored. Moreover, the "primary concern" of the Model Barrier Code, which is to prevent the drowning and near drowning of young children, would be of no concern to all the owners of recreational pools that, through mere historical accident, were built before COMAR's adoption. This result would be illogical, and we reject it.

Petitioners rely on the chapter's legislative history in an attempt to cabin its applicability and broaden the grandfathering provisions. These efforts are unavailing. In the "Notice of Proposed Action" for the COMAR regulations, the "Estimate of Economic Impact" is projected as "minimal due to the grandfathering of existing public pools and spas[.]" Proposed Action on Regulations, 22:14 Md. Reg. 1067 (July 7, 1995). But the estimate also indicates that "there will be an increased cost to owners of some pools and spas for safety personnel and to meet updated standards[.]" *Id*. The estimate further states, in its "Assumptions" section, that "[t]he public may have significant, nonquantifiable savings as a result of decreased illness and injury at public pools and spas." *Id*. at 1068. When pitted against the purposes and objectives of the COMAR regulations, described above, this scant evidence fails to convince us that Petitioners' interpretation is correct.

26

*Application Of The Statute Or Ordinance Rule*

We must now determine whether the COMAR regulations meet the requirements of the Statute or Ordinance Rule. As we have explained, the finding of a statutory duty under the Statute or Ordinance Rule must be premised on the statute being targeted toward a protected class, and not merely the public at large. *See supra*. Consequently, we focus our attention on whether COMAR 10.17.01.21 fulfills this requirement.

Petitioners argue that neither the "Notice of Proposed Action" nor the enacted COMAR statute identify a class of protected persons, much less identify trespassers as the protected class.[16] This is true, but does not tell the whole story. As we have held, the COMAR regulations incorporate the Model Barrier Code, which does identify a specific class—namely, young children under the age of five years. Petitioners miss the mark because they focus exclusively on the lack of a duty to trespassers generally, and ignore the special class of young children that COMAR most assuredly recognizes as beneficiaries of the pool owner's duty.

Thus, under COMAR 10.17.01.21, Petitioners were required to provide a barrier that did not allow passage of a sphere 4 inches in diameter, except when the entrance gate was

---

[16]The Notice of Proposed Action states that "[t]he purpose of this action is to enact regulations that protect and promote the public health and safety of individuals at public and semipublic swimming pools and spas, and limited public-use pools in Maryland."

The enacted purpose in COMAR 10.17.01.01 (2012) states that "[t]he purpose of this chapter is to enact regulations that protect and promote the public health and safety of individuals at public spas and pools in Maryland."

open. *See supra.* This language sets forth mandatory acts for the protection of a particular class identified in the Model Barrier Code—namely, children under the age of five. *See supra.* Christopher, three years old at the time of the accident, was clearly a member of this protected class.

*Violation Of Duty And Causation*

Part (a) of the Statute or Ordinance Rule requires a violation of the statute setting forth the duty of care. *See supra.* Here, evidence concerning the state of the fence at the time of the incident could prove that Petitioners' enclosure failed to meet the requirements of COMAR 10.17.01.21A(3). This question is a disputed matter of fact, for the fact-finder to decide. *See Allen*, 413 Md. at 160, 991 A.2d at 1232–33.

Part (b) of the Statute or Ordinance Rule requires that the violation of the statute was the proximate cause of the injury. "'Proximate cause is established by determining whether the plaintiff is within the class of persons sought to be protected, and the harm suffered is of a kind which the drafters intended the statute to prevent * * * It is the existence of this cause and effect relationship that makes the violation of a statute *prima facie* evidence of negligence.'" *Brooks*, 378 Md. at 79, 835 A.2d at 621 (quoting *Brown*, 357 Md. at 359, 744 A.2d at 55). As we have already discussed, Christopher was a member of the class of persons identified in the Model Barrier Code, and Respondent has alleged injuries that the statute intended to prevent. *See supra.*

Of course, this cause of action cannot sound in negligence per se, because COMAR

28

10.17.01.01 *et seq.* does not expressly provide so. *See Absolon v. Dollahite*, 376 Md. 547, 557, 831 A.2d 6, 11 (2003) ("[T]he settled rule in Maryland is that a statutory violation is evidence of negligence. It does not constitute negligence *per se*, unless a statute expressly makes it so."); *see also Polakoff*, 385 Md. at 478, 869 A.2d at 844 ("As we repeatedly stated in *Brooks*, proof of a statutory violation, plaintiff's membership in the class of people designed to be protected by the statute, and causation, amount to *prima facie* evidence of negligence, not negligence *per se*.") (citations omitted). Respondent must still produce facts that would allow a jury to reasonably conclude that Christopher entered the pool because the gate violated COMAR.

We agree with the Court of Special Appeals that here, sufficient circumstantial evidence existed for a jury to find causation. *See Paul*, 211 Md. App. at 110, 63 A.3d at 1141; *see also Ross*, 430 Md. at 669, 63 A.3d at 13 (2013) ("Childhood exposure to lead paint and dust may be established through circumstantial evidence[.]"); *Dow v. L & R Props., Inc.*, 144 Md. App. 67, 75, 796 A.2d 139, 143 (2002) ("Circumstantial evidence may support a negligence determination if it 'amount[s] to a reasonable likelihood or probability rather than a possibility.'" (quoting *Peterson v. Underwood*, 258 Md. 9, 17, 264 A.2d 851, 855 (1970))). Christopher and his older brother, Andre, were playing at a playground adjacent to the apartment building, and returned three times to the apartment before going back outside to continue playing. As the intermediate appellate court further detailed:

> (1) [A]t the time of the near drowning, Christopher was three-years-old, and his head was approximately 5.1 inches wide; (2)

29

appellant discovered Christopher submerged in the water in the five foot section of the pool closest to the gate; (3) when investigating the near drowning, Detective Hamill observed a pair of shoes and a T-shirt on the "first table [ ] inside the front gate"; (4) Detective Hamill observed that there was "a lot of play in the gate," and that she was "able to completely put [her] leg from the waist down into that [ ] opening, [with] how the gate bowed out"; (5) Detective Hamill stated that it did not take the "force of an adult" to open the gate; (6) Beerman, Berkshire's property manager, testified that he inspected the pool barrier within a day of the near drowning and measured six inch spacing between the vertical posts of the fence; (7) neither Detective Hamill nor Officer Magnelli observed any cuts, bruises, or other injuries to Christopher—*i.e.* marks indicating that he climbed or jumped over the six foot fence surrounding the pool; and (8) Officer Magnelli testified that there was no evidence suggesting that Andre assisted Christopher in gaining access to the pool area.

*Paul*, 211 Md. App. at 111–12, 63 A.3d at 1142. We conclude that this evidence is sufficient for a trier of fact to reasonably conclude that Christopher entered the pool by slipping through the allegedly defective gate.

Because Respondent's allegations, viewed in the light most favorable to her, could satisfy the Statute or Ordinance Rule, *prima facie* evidence of negligence can be established, and there is "'sufficient evidence to warrant the court in submitting the case to the jury on the question of the [Petitioners'] negligence.'" *Allen*, 413 Md. at 144, 991 A.2d at 1223 (quoting *Brooks*, 378 Md. at 79, 835 A.2d at 621). The trial court will then have to determine if the Petitioners' actions "were reasonable under all the circumstances. *Brooks*, 378 Md. at

30

79, 835 A.2d at 621.[17]

## CONCLUSION

For the reasons stated above, we hold that Petitioners' alleged violation of COMAR 10.17.01.21A(3), if proven, would demonstrate the breach of a duty from Petitioners to Christopher. Such a duty, derived from statute, would apply irrespective of Christopher's legal status on the property when the incident occurred. A reasonable trier of fact could find that such a duty existed, that Petitioners violated this duty, and that such violation was the cause of Christopher's injuries.

**JUDGMENT OF THE COURT OF SPECIAL APPEALS AFFIRMED; COSTS TO BE PAID BY PETITIONERS.**

---

[17]We must be clear that "evidence of negligence does not *ipso facto* equate to liability." *Polakoff*, 385 Md. at 479, 869 A.2d at 845.